564 S.E.2d 688

**The STATE, Respondent,**

v.

**Thorn WILLIAMS, Appellant.**

**No. 3506.**

Court of Appeals of South Carolina.

Submitted March 25, 2002.

Decided June 3, 2002.

Chief Attorney Daniel T. Stacey, of SC Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, Assistant Attorney General Christie Newman Barrett, all of Columbia; and Solicitor Walter M. Bailey, Jr., of Summerville, for respondent.

GOOLSBY, Judge:

Thorn Williams appeals his conviction and sentence for possession of a stolen vehicle in violation of S.C.Code Ann. § 16–21–80 (Supp.2000).[1] He contends the trial judge should have directed a verdict in his favor because the evidence was insufficient to show that he knew the motorcycle was stolen. We affirm.[2]

■ When reviewing the denial of a directed verdict motion, this court must view the evidence in the light most favorable to the State and uphold the denial of the motion if there is any evidence, direct or circumstantial, that reasonably tends to prove the guilt of the accused.[3]

---

**1.** S.C.Code Ann. § 16–21–80 (Supp.2000) reads as follows:

A person not entitled to the possession of a vehicle who receives, possesses, conceals, sells, or disposes of it, knowing it to be stolen or converted under circumstances constituting a crime, is guilty of a:

. . . .

(3) felony and upon conviction, must be fined in the discretion of the court or imprisoned not more than ten years, or both, if the value of the vehicle is five thousand dollars or more.

**2.** Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

**3.** *State v. Cooper*, 334 S.C. 540, 514 S.E.2d 584 (1999); *State v. Hammitt*, 341 S.C. 638, 535 S.E.2d 459 (Ct.App.2000).

On July 17, 2001, in the early morning, Larry Hamilton saw four males get out of a white Oldsmobile with shiny hubcaps and run toward a neighbor's house. Later that morning he discovered the two motorcycles that he owned and kept stored in an open garage were missing. Before contacting the sheriff's office, he and his wife found one motorcycle in a field behind their house. He could not find the other, a Suzuki for which Hamilton paid over $5,900.

The next day, July 18, 2001, Hamilton received a page on his beeper from his niece, telling him that his Suzuki had been spotted on Alva Street in Orangeburg. After calling the sheriff's office, Hamilton and his wife drove to Alva Street. As they came down the street, a motorcycle and a rider emerged from a side street. Hamilton immediately recognized the motorcycle as his Suzuki.

The Hamiltons followed the motorcycle down the street. Hamilton's wife recognized the rider as Thorn Williams after he turned around and faced the Hamiltons' car. When Williams saw the Hamiltons, he "reared the bike up" and "took off," with its "wheels spinning." The Hamiltons, in a Ford Explorer, gave pursuit, but Williams soon "lost" them.

After again calling the sheriff's office, the Hamiltons circled back and drove to where Williams lived on Alva Street with a woman who patronized the beauty shop owned by Hamilton's wife. Williams frequently visited the beauty shop. The Hamiltons saw parked in Williams's yard a white Oldsmobile with shiny hubcaps. Hamilton's wife had seen Williams driving it. Motor vehicle records showed the car registered to Rhoda Williams, who lived with Williams at the Alva Street address.

Williams came out of the residence, wearing a cap and a different shirt. He had a large scrape on his right forearm and had been bleeding. It appeared to be a "road rash," a type of wound that could be caused by gravel damage suffered by one involved in a motorcycle wreck.

Following his arrest a few days later, Williams gave a written statement in which he told of driving three friends out to the Hamiltons' neighborhood and dropping them off. He said he thought they were going to the house of one of his friend's mother. Thirty minutes to an hour later, however, they returned to his place on Alva Street with a motorcycle.

After his friends had the motorcycle for, Williams said, "about three days" and no one came looking for it, Williams "figured it was a legal bike." He admitted riding the motorcycle the day the deputy sheriff and the Hamiltons met him at his residence.

The Suzuki was not recovered.

There are five elements to the offense of possession of a stolen vehicle: (1) there must be a vehicle; (2) it must be stolen; (3) a person must possess the vehicle; (4) the person must not be one entitled to its possession; and (5) the person possessing the vehicle must know it was stolen.[4] Only the last element is at issue here.

■ There is evidence, albeit circumstantial, from which a jury could reasonably infer that Williams knew the motorcycle was stolen.[5] Soon after the Suzuki was stolen, he was seen with it in his possession.[6] Additionally, Williams took flight

---

4. *See* S.C.Code Ann. § 16–21–80; *State v. McNeil,* 314 S.C. 473, 445 S.E.2d 461 (Ct.App.1994).

5. *See* 76 C.J.S. *Receiving Stolen Goods* § 26, at 33 (1994) (the burden is on the prosecution to show that the accused knew the property was stolen property at the time he possessed it, and an inference of the accused's knowledge can be drawn from the surrounding facts and circumstances); *id.* § 28b, at 37 ("As in other criminal prosecutions where guilty knowledge is the gist of the offense, in prosecutions for receiving stolen property and related offenses any evidence tending to prove ... knowledge of accused that the goods received were stolen is admissible.").

6. *See State v. Lyles,* 211 S.C. 334, 45 S.E.2d 181 (1947) (the possession of recently stolen property is an evidential fact from which the possessor's guilt may be inferred); *State v. Lee,* 147 S.C. 480, 145 S.E. 285 (1928) (in holding a defendant may offer testimony tending to explain his possession of recently stolen goods, the court noted that in a prosecution for receiving stolen goods guilty knowledge can be proved by showing a person was found in possession of recently stolen goods); 50 Am.Jur.2d *Larceny* § 153, at 142 (1995) (a jury may properly "consider the defendant's possession of recently stolen property as a relevant circumstance in determining whether the defendant was guilty of the crimes" of larceny and burglary where they "occurred as part of the same criminal enterprise"); *id.* § 166, at 153–54 ("The possession of stolen property by the defendant soon after the commission of the alleged crime is merely an evidentiary fact tending to establish guilt which should be submitted to the jury, to be considered in connection with all the other facts and circumstances disclosed by the evidence.");

when he chanced upon the owner and his wife and realized they had spotted him riding it. Indeed, he was in such a hurry to flee from the Hamiltons that he might have injured himself in the process.[7] Under these circumstances, it is little wonder that the jury, which it was free to do,[8] did not buy Williams's statement that he did not think the motorcycle was stolen because no one came inquiring about it after a while. Particularly is this so when one also considers that the friends whom Williams drove in the early morning hours to the neighborhood in which the motorcycle was stolen returned to his house within the hour with the motorcycle and that any explanation as to how his friends came to have it that morning was notably absent from Williams's statement.

**AFFIRMED.**

CONNOR and ANDERSON, JJ., concur.

---

66 Am.Jur.2d *Receiving Stolen Property* § 25, at 25 (2001) ("Evidence of the unexplained possession of recently stolen goods by one charged with unlawfully receiving them is admissible in a prosecution for the offense and is a strong circumstance to be considered with all the evidence in the case on the question of guilty knowledge.").

7. *See* 50 Am.Jur.2d *Larceny* § 155, at 144 (1995) ("Evidence of flight of the accused is admissible in a theft prosecution."); 29 Am.Jur.2d *Evidence* § 532, at 608 (1994) ("Flight, concealment, or analogous conduct, when unexplained, is admissible as indicating consciousness of guilt, for it is not to be supposed that one who is innocent and conscious of that fact would flee."); 52A C.J.S. *Larceny* § 123, at 627 (1968) (evidence regarding the conduct of the accused after a larceny "may be proved against him if the acts testified to have a legal tendency to connect him with the crime").

8. *See* 50 Am.Jur.2d *Larceny* § 169, at 157 (1995) ("What amounts to such an explanation of the possession as will rebut the probative force of the possession must necessarily depend upon the circumstances of each case; ... and possession may be regarded as unexplained notwithstanding the defendant's evidence in explanation, for the jury is at liberty to disregard or disbelieve such evidence and to give credence instead to the testimony of the owner and the witnesses for the state.") *People v. Everett*, 10 N.Y.2d 500, 225 N.Y.S.2d 193, 180 N.E.2d 556, 560 (in which the court upheld a "charge that recent possession, if unexplained or falsely explained, justifies the 'inference of the commission of a larceny by the defendant' "), *cert. denied*, 370 U.S. 963, 82 S.Ct. 1593, 8 L.Ed.2d 830 (1962).