600 S.E.2d 100

**The STATE, Respondent,**

v.

**Quinzell ROBINSON, Appellant.**

No. 3830.

Court of Appeals of South Carolina.

Submitted June 8, 2004.

Decided June 21, 2004.

Rehearing Denied Aug. 18, 2004.

Assistant Appellate Defender Aileen P. Clare, of S.C. Office of Appellate Defense, of Columbia, for Appellant.

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor Cecil Kelley Jackson, of Sumter, for Respondent.

KITTREDGE, J.

Quinzell Robinson was convicted of armed robbery and sentenced to sixteen years imprisonment. He appeals, arguing a violation of his Constitutional protection from double

jeopardy and reversible error in the admission of evidence concerning his flight from police custody. We affirm.

## FACTS

On March 28, 2001, Robinson and Kevin Atkins were riding in a blue van. Robinson and Atkins stopped at Connor's Superette convenience store in Sumter County and made a small purchase. Following their exit, the store clerk saw a blue van leave the parking lot. A short time later, Atkins again entered the store, this time with female companion Bridgette Epps. Atkins, wielding a handgun, pinned the store clerk behind the service counter and ordered her to open the register. Once open, both Atkins and Epps began grabbing money from the register. As customers approached the store, Atkins and Epps fled the store. A few seconds following the robbery, the clerk again noticed the blue van exiting the parking lot. The clerk activated a silent alarm signal from the store and called the police.

While patrolling the area of the robbery, officers spotted a blue van and pulled it over. Robinson, the driver, and Atkins, the only passenger at this time, were arrested.[1] At some point during the armed robbery investigation, Robinson was informed that he was also a suspect in an unsolved murder. Robinson, who had agreed to cooperate with law enforcement concerning the armed robbery, led police to the area where the gun used in the robbery was discarded. The police found the weapon with Robinson's assistance. While returning to the police station, a handcuffed Robinson successfully fled from the police vehicle while it was slowing for a traffic light. He was apprehended and arrested five days later at a nearby residence wearing a wig, a dress, lipstick, and high-heeled shoes and hiding under several mattresses. Robinson, Atkins, and Epps were indicted for armed robbery, possession of a firearm during the commission of a crime, and conspiracy.

In the first trial against Robinson, following approximately two days of testimony, jury deliberations began on the third day at 9:54 a.m. The trial judge recharged the jury in

---

1. Epps jumped from the van and fled on foot when she saw the police car. She was subsequently arrested and cooperated with law enforcement, providing a confession.

response to the jury's requests, and witness testimony was replayed. At 4:03 p.m., the jury sent a note to the judge stating it had not come to a unanimous decision on the first and second charge (armed robbery and conspiracy), but had agreed on a verdict as to the third charge (possession of a firearm). Over Robinson's objection, the judge charged the jury pursuant to *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

At 5:32 p.m., the jury sent the judge another note indicating that it remained deadlocked on the two undecided charges and inquiring into court policies regarding the jurors' personal responsibilities, such as picking up their children. The judge responded by allowing any juror who needed to make alternative personal arrangements access to a telephone. The judge also explained that law enforcement officers would aid any juror who needed assistance with transportation or otherwise. As to the jury's deadlock status, the judge expressed his desire that the deliberations continue until a verdict was reached, but requested the jury determine if more time would be beneficial in pursuit of a unanimous verdict.

Six minutes after giving this direction, the judge received a final note from the jury, which stated:

We feel that further deliberation would not make a difference. We do appreciate your patience, but we can't reach a decision on the 1st and 2nd charges.

The judge summoned the jury into the courtroom where a verdict of not guilty was published as to the charge of possession of a firearm during the commission of a crime. Over Robinson's objection, the judge then declared a mistrial in regard to the two undecided charges.

Over Robinson's renewed objection and motion to dismiss, Robinson was retried on the two remaining charges. The jury found Robinson not guilty of conspiracy, but guilty of armed robbery. He appeals from his armed robbery conviction and sentence.

### ISSUES ON APPEAL

I. Did the trial court err in denying Robinson's motion to dismiss based on the Double Jeopardy Clause?

192

II. Did the trial court err in allowing evidence of Robinson's flight from law enforcement?

## STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only. *State v. Cutter,* 261 S.C. 140, 147, 199 S.E.2d 61, 65 (1973). We are bound by the trial court's factual findings unless they are clearly erroneous. *State v. Quattlebaum,* 338 S.C. 441, 452, 527 S.E.2d 105, 111 (2000). Concerning the admission of evidence, the trial judge's determination will be sustained absent error and resulting prejudice. *State v. Hamilton,* 344 S.C. 344, 353, 543 S.E.2d 586, 591 (Ct.App. 2001).

## DISCUSSION

### I. Mistrial

Robinson argues the declaration of mistrial in his initial trial was in error, thereby precluding the subsequent trial. Specifically, Robinson argues the retrial violated the United States and South Carolina Constitutions' Double Jeopardy Clauses. We disagree.

The Double Jeopardy Clauses of the United States and South Carolina Constitutions are in accord. The federal constitution provides that "[n]o person shall ... be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const. amend. V. The South Carolina counterpart similarly provides that "[n]o person shall be subject for the same offense to be twice put in jeopardy of life or liberty...." S.C. Const. art. I, § 12. *See State v. Easler,* 327 S.C. 121, 132, 489 S.E.2d 617, 623 (1997) ("Article I, section 12 of the S.C. Constitution is essentially identical to the Fifth Amendment and, on its face, confers no greater rights than the federal constitution."); *see also Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) (holding the United States Constitution's Double Jeopardy Clause is applicable to the states through the Due Process Clause of the Fourteenth Amendment). Pursuant to this clause, a defendant, such as Robinson, is protected from multiple prosecutions for the same offense after an improvidently granted

mistrial.[2] *State v. Kirby,* 269 S.C. 25, 27–28, 236 S.E.2d 33, 34 (1977); *State v. Baum,* 355 S.C. 209, 214, 584 S.E.2d 419, 421 (Ct.App.2003). If, in a criminal trial, a mistrial is declared "without an absolute necessity for it, the [mistrial] is equivalent to an acquittal, and may be pleaded as a bar to a subsequent indictment." *State v. Bilton,* 156 S.C. 324, 342, 153 S.E. 269, 276 (1930) (internal quotation marks omitted). We must, therefore, determine the propriety of the trial court's initial declaration of mistrial.

We find the trial court properly declared a mistrial. It is universally recognized that a genuine inability of the jury to reach a unanimous verdict constitutes a manifest necessity for the declaration of a mistrial. 21 Am.Jur.2d *Criminal Law* § 402 (2003). "[A] mistrial declared by the judge following the jury's declaration that it was unable to reach a verdict ... remains the prototypical example [of] ... 'manifest necessity.' " *Oregon v. Kennedy,* 456 U.S. 667, 672, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). The trial judge, however, has a duty to urge the jury to reach a verdict, provided he does not coerce them. *State v. Williams,* 344 S.C. 260, 263–64, 543 S.E.2d 260, 262 (Ct.App.2001). The typical judicial mechanism for encouraging an indecisive jury is the *Allen* charge, in which jurors are instructed on, among other things, their duties to approach the evidence with an open mind and consider the opinions of their fellow jurors.[3] If a jury, following additional deliberations in the wake of an *Allen* charge, remains deadlocked, section 14–7–1330 of the South Carolina Code of Laws is triggered. The statute reads, in pertinent part, "[b]ut if [the jury] returns a second time without having agreed upon a verdict, it shall not be sent out again without its own consent unless it shall ask from the court some further explanation of the law." S.C.Code Ann. § 14–7–1330 (1976). At the second indication of deadlock, courts typically inquire as to whether more deliberations would be beneficial to the jury, and the issue of consent is determined from the jury's

---

2. The Double Jeopardy Clause applies in other situations, but we limit our analysis to the particular protection applicable here.

3. *See Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896) (defining the charge used to encourage a deadlocked jury to reach a verdict).

response. *See Buff v. South Carolina Dep't of Transp.*, 342 S.C. 416, 422, 537 S.E.2d 279, 282 (2000) ("[W]hen a jury has twice indicated it is deadlocked, the trial judge should diplomatically discuss with the jury whether further deliberations could be beneficial. The jury's consent to resume or to discontinue deliberations is determined, either expressly or impliedly, by its response to the trial judge's comments.")

In the case before us, deliberations for a two-day criminal trial lasted an entire day. Upon receiving notification of deadlock, the judge administered an *Allen* charge. When the judge received further notice of deadlock, he diplomatically inquired whether more time would help facilitate unanimity. The jury responded with the unequivocal answer that additional time to deliberate would not break the deadlock. Not only was the declaration of mistrial at this juncture proper, it was mandated by law. Had the trial court ordered further deliberations, any subsequent verdict would have likely been tainted. *See, e.g., State v. Simon*, 126 S.C. 437, 120 S.E. 230 (1923) (finding the demand of further deliberations by the trial judge after clear indication of second deadlock was coercive).

We conclude that the Double Jeopardy Clause was no bar to the retrial of Robinson.

## II. Evidence of Flight

■ The State, over Robinson's objection, introduced evidence of Robinson's flight from police officers while he was assisting them in the recovery of the weapon used in the armed robbery. Robinson argues the trial court abused its discretion in admitting this evidence. Robinson specifically contends that because he was told he was also a suspect in an unrelated crime, the evidence of flight was irrelevant and admitted in violation of Rule 402, SCRE. We disagree.

■ Rule 402, SCRE reads in relevant part, "[e]vidence which is not relevant is not admissible." Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE; *State v. Saltz*, 346 S.C. 114, 127, 551 S.E.2d 240, 247 (2001). "Flight from prosecution is admissible as evidence of guilt." *State v. Pagan*, 357 S.C. 132, 140,

591 S.E.2d 646, 650 (Ct.App.2004) (quoting *State v. Al–Amin,* 353 S.C. 405, 413, 578 S.E.2d 32, 36–37 (Ct.App.2003)). *See also State v. Beckham,* 334 S.C. 302, 315, 513 S.E.2d 606, 612 (1999) (stating that evidence of flight has been held to constitute evidence of guilty knowledge and intent); *State v. Grant,* 275 S.C. 404, 407, 272 S.E.2d 169, 171 (1980) ("[A]ttempts to run away have always been regarded as some evidence of guilty knowledge and intent.") (internal quotation marks omitted); *State v. Ballenger,* 322 S.C. 196, 200, 470 S.E.2d 851, 854 (1996) (noting that flight is "at least some evidence" of defendant's guilt); *State v. Thompson,* 278 S.C. 1, 10–11, 292 S.E.2d 581, 587 (1982), *overruled on other grounds by State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991) (finding evidence of flight admissible to show guilty knowledge, intent, and that defendant sought to avoid apprehension); *State v. Freely,* 105 S.C. 243, 89 S.E. 643 (1916) (declaring the flight of one charged with a crime has always been held to be some evidence tending to prove guilt); *State v. Williams,* 350 S.C. 172, 176, 564 S.E.2d 688, 691 (Ct.App.2002) (citing 29 Am. Jur.2d *Evidence* § 532 (1994)) (noting that flight, when unexplained, is admissible as indicating consciousness of guilt).

Case law, however, further recognizes that the relevance of flight evidence is premised on a nexus between the flight *and the offense charged.   See, e.g., United States v. Beahm,* 664 F.2d 414, 419–20 (4th Cir.1981) (finding evidence of flight inadmissible where a defendant flees "after 'commencement of an investigation' unrelated to the crime charged, or of which the defendant was unaware"); *United States v. Foutz,* 540 F.2d 733, 740 (4th Cir.1976) (stating that evidence of flight should be excluded where defendant flees while being investigated for another crime).

While we agree with Robinson that his knowledge of the murder investigation somewhat attenuated the inference of guilt in connection with the armed robbery charge, we believe that in the unique factual setting of this case, the trial court acted within its discretion in admitting the flight evidence.   Evidence of flight should be excluded when the flight is clearly linked to a separate offense for which the defendant is not on trial.   That, however, is not the case here.   Robinson was keenly aware of the armed robbery charge, for he was assisting law enforcement in the armed robbery investigation

when he fled. In reviewing a challenge to the admissibility of such evidence, the inquiry must be an objective one. We reject Robinson's claim that his statement of why he fled from police is dispositive on the question of admissibility. Objectively viewed, there is a sufficient nexus between Robinson's flight and the armed robbery charge to affirm the admission of flight evidence. Furthermore, he was allowed to present to the jury his alternative explanation of his flight, without referencing the murder investigation. We further conclude that the probative value of this relevant evidence is not "substantially outweighed by the danger of unfair prejudice." Rule 403, SCRE.

## *CONCLUSION*

We find no violation of the Double Jeopardy Clause and no error in the admission of evidence regarding Robinson's flight. Robinson's conviction and sentence for armed robbery is

**AFFIRMED.**

ANDERSON and HUFF, JJ., concur.