# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

John Joseph Erb, Petitioner.

Appellate Case No. 2024-001518

---

## ON WRIT OF CERTIORARI TO THE CIRCUIT COURT

---

Appeal from Charleston County
Bentley J. Price, Circuit Court Judge

---

Opinion No. 28298
Heard April 22, 2025 – Filed September 3, 2025

---

## REVERSED

---

Senior Assistant Public Defender Benjamin Andrew Mack, Circuit Public Defender Cameron Jane Blazer, and Assistant Public Defender Timothy Patrick Corbett, Jr., all of Charleston, all for Petitioner.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General W. Jeffrey Young, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody Jane Brown, Assistant Attorney General R. Brandon Larrabee, all of Columbia; and Solicitor Scarlett Anne Wilson, of Charleston, all for Respondent.

**JUSTICE JAMES:** We issued a common law writ of certiorari to the circuit court to determine whether the trial court erred in finding the State may retry John Joseph Erb for murder after issues arose during jury polling at the conclusion of his trial. We reverse the trial court and hold Erb cannot be retried for murder. We also hold double jeopardy bars Erb from being tried for voluntary manslaughter.

## I.

On March 20, 2020, Erb was arrested for the murder of Donald Blake. He was indicted on that sole count in August 2023 and was tried one month later. The record contains no details of Blake's death, other than the allegation in the indictment that Erb committed murder by blunt force trauma. The trial court, Judge Bentley J. Price, instructed the jury on murder and, over Erb's objection, the lesser-included offense of voluntary manslaughter. After deliberating for more than five hours, the jury advised it had reached a unanimous verdict. The trial court correctly read the verdict form into the record as "not guilty" for murder and "guilty" for manslaughter. The State declined the trial court's offer to poll the jury, but defense counsel requested polling. The first ten jurors polled answered "yes" to the two polling questions: "is this your verdict," with the follow-up "is it still your verdict?"[1] The eleventh juror polled (hereinafter, Juror 16) answered "no" to the follow-up question of whether it was still her verdict. The trial court immediately sent the jurors back to the jury room—without ordering the jurors to continue deliberations[2]—and asked the attorneys if they wanted him to give an *Allen*[3] charge.

---

[1] Erb obviously intended for polling to be on only the voluntary manslaughter verdict, as the murder verdict was not guilty.

[2] In its written order ruling Erb could be retried for murder, the trial court stated it sent the jury out with instructions "to continue deliberations toward reaching a unanimous verdict." That is not borne out by the transcript. The transcript establishes that after Juror 16 was polled, the trial court said to the jury, "[Y]ou'll have to return to the—to the jury room." Immediately after the jury departed, the trial court began discussing the prospect of an *Allen* charge with counsel.

[3] *Allen v. United States*, 164 U.S. 492 (1896). "The typical judicial mechanism for encouraging an indecisive jury is the *Allen* charge, in which jurors are instructed on, among other things, their duties to approach the evidence with an open mind and

Defense counsel expressed hesitation based on the revealed "split" of the jury, and the trial judge told the attorneys to "hang tight" before he left the courtroom for 14 minutes.  When the judge returned, he asked the bailiff to bring only Juror 16 back into the courtroom.  Before the bailiff brought the juror out, defense counsel stated, "Judge, may I ask what the plan is here?"  In response, the trial court stated:

> I'm just going to ask her what she wants to do.  I mean, if she thinks it's futile and to continue to deliberate, I'm going to declare a mistrial.  If she says I just lost it, I think I can talk to my friends, I just got to see what she needs to do before I make a decision.

Defense counsel objected, arguing the questioning of one juror would be coercive.  The State expressed the same concern and requested the trial court to instruct the jury to continue deliberations.  Despite both parties' request that he not question Juror 16 directly, the trial judge did not instruct the jury to continue deliberations; instead, the trial court summoned only Juror 16 to the courtroom and said to her, "so you indicated that it was your verdict and then that it was not your verdict.  Only one question is that is me allowing you a little bit more time to deliberate that it'd be futile."  Juror 16 answered, "Yes, sir.  It was always not guilty, and I just wanted to get it over with because they were all in there screaming and yelling at me and I just—I'll never change my—like, it's not guilty.  I'm sorry."  Without asking for any input or argument from the parties, the trial court immediately said, "Bring [the jury] out."  When the remainder of the jury was seated, and again without seeking input from the parties, the trial court immediately declared a mistrial, stating to the jury, "We have to get 12 people to agree, and we weren't able to, so I'm going to declare a mistrial."

Approximately one week later, the State published a trial roster with Erb's murder charge listed.  Erb petitioned for habeas corpus and moved in the alternative for entry of a verdict pursuant to Rule 29 of the South Carolina Rules of Criminal Procedure.  Both requests for relief were based on the ground that jeopardy attached to the murder indictment because the jury returned a final verdict of not guilty on that charge.  Judge Price denied relief in a written order, stating in pertinent part "[j]eopardy has NOT attached to the above referenced charge leaving the State in a position to retry the Defendant for Murder."

The trial court denied Erb's motion to reconsider, and Erb appealed to the court of appeals.  He also petitioned the court of appeals for writs of supersedeas and

---

consider the opinions of their fellow jurors."  *State v. Robinson*, 360 S.C. 187, 193, 600 S.E.2d 100, 103 (Ct. App. 2004).

habeas corpus. The court of appeals dismissed the appeal, finding the trial court's ruling was not immediately appealable. The court of appeals also denied Erb's petitions for supersedeas and habeas corpus. We denied Erb's petition for a writ of certiorari to the court of appeals but issued a common law writ of certiorari to the circuit court "to review only that portion of the trial court's ruling that provides the State may 'retry the Defendant for Murder.'" In his brief, Erb argued jeopardy has also attached to voluntary manslaughter. Because our initial common law writ pertained only to murder, we asked for supplemental briefing on the manslaughter issue, which the parties provided. We address both issues in this opinion.

## II.

In *State v. Kirby*, we addressed a claim of double jeopardy (also known as "former jeopardy") and stated,

> The theory of former jeopardy presupposes the imposition of the adjudicatory gauntlet only once when one is accused of a crime. This guarantee consists of three separate constitutional safeguards: (1) protection from prosecution for the same offense after acquittal; (2) protection against prosecution for the same offense after conviction; and (3) protection from multiple prosecution for the same offense after an improvidently granted mistrial. The safeguards derive their constitutional proportion through Article 1, Section 12 of the South Carolina Constitution and the Fifth Amendment of the United States Constitution made applicable to the states through the due process clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784 (1969).

269 S.C. 25, 27-28, 236 S.E.2d 33, 34 (1977) (citation modified). Article 1, section 12 of the South Carolina Constitution provides, "No person shall be subject for the same offense to be twice put in jeopardy of life or liberty, nor shall any person be compelled in any criminal case to be a witness against himself." The Fifth Amendment of the United States Constitution provides in pertinent part that no "person be subject for the same offence to be twice put in jeopardy of life or limb."

The determination of whether jeopardy has attached is a question of law, which we review de novo. *See State v. Frasier*, 437 S.C. 625, 633-34, 879 S.E.2d 762, 766 (2022) (refining the Court's standard of review of constitutional questions).

Before we begin our analysis of the jeopardy issue, we must address what got us here—the trial court's misguided decision to question Juror 16 individually.

While polling rarely results in a juror changing her mind, it does happen.  That is why parties request polling after an unfavorable verdict, so the trial court should have been prepared to act accordingly.  After Juror 16 was polled, the trial court should have stated to the jury that it was apparent the jury had not reached a unanimous verdict and then instructed the jury to continue deliberating and to let the court know when it reached a unanimous verdict.  That is true regardless of whether Juror 16 was the first, fifth, eleventh, or last juror polled.  Both the solicitor and defense counsel correctly argued individual questioning of Juror 16 would be improper, but the trial court ignored their input.  Had the trial court heeded the arguments of counsel and instructed the jury to continue deliberating, the situation we face would likely have been avoided—if the jury continued to deliberate, it might have eventually returned hung, or with a verdict of guilty on murder, or with a verdict of not guilty on murder and guilty on voluntary manslaughter, or with a total not guilty verdict.

**A. Under these facts, jeopardy attached to the murder charge because the jury's "not guilty" verdict on that charge was final.**

"An acquittal occurs when there has been a ruling 'relating to the ultimate question of guilt or innocence,'" and "once rendered, a jury's verdict of acquittal is inviolate."  *McElrath v. Georgia*, 601 U.S. 87, 94, 96 (2024) (citation modified).  Thus, jeopardy attaches once a jury returns a unanimous and final verdict of not guilty.  *See Green v. United States*, 355 U.S. 184, 192 (1957).  Continued deliberations after the jury reports its vote to the court "deprive[] that report of the finality necessary to constitute an acquittal . . . ."  *Blueford v. Arkansas*, 566 U.S. 599, 606 (2012); *State v. Brown*, 437 S.C. 550, 878 S.E.2d 364 (Ct. App. 2022) (holding jeopardy did not attach to a charge despite jury's report of a unanimous vote against the charge because of continued deliberations after the report).

The State argues the murder verdict was not final because it was not "accepted" by the trial court.  We disagree.  This case is distinct from *State v. Bell*, 322 N.W.2d 93 (Iowa 1982), which the State argues supports rejecting acceptance of a final verdict on the greater offense when only one count is being tried and there is disagreement on a lesser-included offense.  In *Bell*, the defendant was tried for first-degree murder, and the jury returned a verdict finding the defendant guilty of the lesser-included offense of second-degree murder.  *Id.* at 94.  After polling revealed one juror disagreed with the verdict, the court denied the State's request that the trial court instruct the jury to continue to deliberate and granted the defendant's motion for a mistrial.  *Id.*  Prior to his retrial for murder, the defendant moved to dismiss the murder charge on double jeopardy grounds, and the trial court denied the motion.  *Id.*  After granting discretionary review, the Supreme Court of Iowa held

the verdict on second-degree murder did not constitute an implied acquittal for first-degree murder because "the polling showed the jury did not agree on the verdict and the jury was discharged *on defendant's motion* for mistrial . . . ." *Id.* at 95 (emphasis added). The court held the defendant "prevented the jury from being sent out for further deliberation by his motion for mistrial. Thus there was no verdict. Without a verdict there was no acquittal." *Id.* Here, an obvious distinction from *Bell* is the trial court's sua sponte declaration of a mistrial—not at Erb's request—which prevented the jury from deliberating further.

In this case, the "not guilty" verdict on murder was signed by the foreperson and read into the record without contest. The State declined polling, indicating the State accepted the finality of that verdict at that point. If the State had requested polling, it could have asked for repolling on murder after Juror 16 was polled. And even though the State did not initially request polling, it could have asked for polling on murder after Juror 16 was polled. Erb's request for polling was clearly limited to the verdict on voluntary manslaughter. He had no reason to request polling on murder, because the jury found him not guilty of that charge. Importantly, the jury did not continue deliberations after it returned the murder verdict, distinguishing this case from both *Blueford* and *Brown*. Had the trial court recognized the obvious— that the jury had not reached a unanimous verdict—and ordered the jury to continue deliberations, the jury would have been free to revisit its initially-stated not guilty verdict on murder. Under the unique and unfortunate circumstances of this case, set in motion by the trial court's erroneous questioning of Juror 16, the murder verdict is final.

**B. Jeopardy attached to the murder charge and to the lesser-included offense of voluntary manslaughter because the trial court improvidently declared a mistrial.**

We hold that even if the murder verdict was not final, double jeopardy bars a retrial of the murder charge because the trial court improvidently granted a mistrial. A retrial of the lesser-included voluntary manslaughter charge is likewise barred.

"If, in a criminal trial, a mistrial is declared 'without an absolute necessity for it, the [mistrial] is equivalent to an acquittal, and may be pleaded as a bar to a subsequent indictment.'" *Robinson*, 360 S.C. at 193, 600 S.E.2d at 103 (quoting *State v. Bilton*, 156 S.C. 324, 342, 153 S.E. 269, 276 (1930)). "[A] genuine inability of the jury to reach a unanimous verdict constitutes a manifest necessity for the declaration of a mistrial." *Id.* at 193, 600 S.E.2d at 103. If one juror indicates discomfort with the verdict, the trial judge should instruct the jury to continue deliberations. *See State v. Kelly*, 372 S.C. 167, 170, 641 S.E.2d 468, 469-70 (Ct.

App. 2007). Here, the trial court did not instruct the jury to continue deliberations; instead, it made the snap—and erroneous—decision to sua sponte declare a mistrial.

The State does not defend the trial court's erroneous decision to question Juror 16 individually. Instead, the State argues the results of the polling caused the verdict to "implode" in a way that revealed the numerical split of the jury, thus rendering a mistrial the only proper alternative for the trial court. Juror 16 was the eleventh juror polled, so her response indeed revealed at least a 10-1 split on voluntary manslaughter (the last juror was not polled) at the time of polling. However, as we noted above, after Juror 16 was polled, it was apparent the jury had not yet reached a unanimous verdict. Any "implosion" of the verdict was not brought about by the result of the polling—it was brought about by the trial court's mishandling of the result of the polling by questioning Juror 16 individually. The State does not address that obvious defect and instead jumps straight to the argument that an *Allen* charge would have been ruled coercive had the trial court opted to give one after polling. That misses the point. Had the trial court simply instructed the jury to continue deliberating and the jury later advised the trial court it could not reach a verdict on murder and manslaughter or could not reach a verdict on manslaughter, <u>then</u> the trial court would have had to decide whether an *Allen* charge should be given.

In *United States v. Jorn*, a tax-return preparer was charged with filing fraudulent income tax returns for clients. 400 U.S. 470, 472 (1971). After the jury was sworn, the prosecution called one of several clients to testify, and a question arose as to whether the clients had been advised of their right to remain silent when they were initially questioned by authorities. *Id.* at 473. The trial court sua sponte declared a mistrial so the issue could be resolved. *Id.* When the case was recalled for trial before another jury, the same trial court ruled jeopardy attached during the aborted trial and the defendant could not be tried again. *Id.* The United States Supreme Court agreed, noting that "[w]hen one examines the circumstances surrounding the discharge of this jury, it seems abundantly apparent that the trial judge made no effort to exercise a sound discretion to assure that, taking all the circumstances into account, there was a manifest necessity for the sua sponte declaration of this mistrial." *Id.* at 487.

In *State v. Benton*, we recognized "the double jeopardy clause bars a second prosecution unless the mistrial was declared due to 'manifest necessity,' that is a 'high degree' of necessity to further the ends of justice and preserve public confidence in fair trials." 443 S.C. 1, 6, 901 S.E.2d 701, 703 (2024) (citing *Renico v. Lett*, 559 U.S. 766, 774-75 (2010) and *Illinois v. Somerville*, 410 U.S. 458, 468 (1973)). In *Benton*, considering different circumstances, we held the trial court did not improvidently grant a mistrial. In so holding, we noted:

The trial court conscientiously considered alternatives to the drastic remedy of declaring a mistrial. *Cf. Jorn*, 400 U.S. at 487 (holding a trial court abused its discretion in declaring a mistrial when it did so without allowing either party to object or request a continuance); *see also Arizona v. Washington*, 434 U.S. 497, 506 (1978) (explaining the "manifest necessity" test cannot be applied "mechanically or without attention to the particular problem confronting the trial [court]").

443 S.C. at 6-7, 901 S.E.2d at 703-04 (citation modified). Here, the trial court considered no alternatives to declaring a mistrial. The trial court disregarded the arguments of the parties and afforded neither party the chance to object to its decision to grant a mistrial. The following observation of the Supreme Court in *Jorn* fits this case to a T: "When one examines the circumstances surrounding the discharge of this jury, it seems abundantly apparent that the trial judge made no effort to exercise a sound discretion to assure that, taking all the circumstances into account, there was a manifest necessity for the sua sponte declaration of this mistrial." 400 U.S. at 487. We hold the trial court's sua sponte declaration of a mistrial, colored by its mishandling of the polling results, was not manifestly necessary. Jeopardy attached to both the murder and voluntary manslaughter charges.

## III.

For the foregoing reasons, we hold jeopardy has attached to both murder and voluntary manslaughter; therefore, the State may not retry Erb for either offense.

**REVERSED.**

**KITTREDGE, C.J., FEW, HILL, and VERDIN, JJ., concur.**