694 S.E.2d 9

**The STATE, Respondent,**

v.

**Keith Anthony SIMS, Petitioner.**

**No. 26820.**

Supreme Court of South Carolina.

Heard Jan. 6, 2010.
Decided May 17, 2010.
Rehearing Denied June 24, 2010.

558

Senior Appellate Defender Joseph L. Savitz, III, and Appellate Defender LaNelle C. DuRant, both of South Carolina Commission on Indigent Defense, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Melody J.

Brown, Assistant Attorney General Alphonso Simon, Jr., and Solicitor Warren B. Giese, all of Columbia, for Respondent.

Justice KITTREDGE.

This case concerns Rule 801(d)(2)(E), SCRE, which allows in evidence as non-hearsay an out-of-court statement made by a non-testifying "coconspirator of a party during the course and in furtherance of the conspiracy." Keith Anthony Sims was convicted and sentenced for murder. Sims appealed, challenging the admission of a statement attributed to a non-testifying declarant as inadmissible hearsay. The court of appeals affirmed, and we granted a writ of certiorari to review that decision. *State v. Sims*, 377 S.C. 598, 661 S.E.2d 122 (Ct.App.2008). The court of appeals erred in finding the challenged evidence satisfied the "in furtherance of the conspiracy" prong of Rule 801(d)(2)(E). We affirm in result,

however, because the erroneously admitted hearsay was harmless.

## I.

The body of Brian Anderson was found in a Newberry County pond on December 31, 2003. The body was chained to a pipe weighted down by two cement blocks. Anderson had been shot in the right eye. Marks on Anderson's body indicated he was dragged to the pond. Nearby, law enforcement agents found work gloves and packaging.

The next day, Anderson's blood-spattered car was located in the parking lot of a Columbia apartment complex. The pattern of blood stains indicated that someone in the front passenger's seat had shot Anderson while he was in the driver's seat. Anderson was last seen alive on December 30 at a party in a Columbia hotel.

Sims and Anderson were acquaintances. They left the party together around midnight in Anderson's car. Evidence pointed to Sims as the killer, and he was arrested and charged with murder. His subsequent statements to law enforcement contained several versions of his involvement in Anderson's death.[1]

During the investigation, law enforcement learned that Sims had enlisted the support of three individuals to help him dispose of Anderson's body, Sims's bloody clothes and the gun used to kill Anderson. Those three individuals were Natalie English (Sims's girlfriend), Derrick Ruff (Sims's friend), and Nikki Davis (Ruff's girlfriend). English, Ruff, and Davis were charged as accessories after-the-fact of murder.

---

[1]. Sims's initial statement acknowledged that Anderson had "dropped him off" after the party, but denied any involvement in Anderson's death: "I ain't got no pistol.... That's crazy. I didn't kill Brian." In a subsequent statement, Sims told law enforcement that he and Anderson left the party together around 1:00 a.m.; they stopped at McDonald's and a crack house before Anderson dropped off Sims. In a third statement, Sims continued to deny any involvement in Anderson's death. Sims eventually admitted to law enforcement that he shot Anderson, but contended Anderson had pulled a gun on him. At trial two years later, Sims admitted killing Anderson, who was unarmed. Sims asserted self-defense as he testified he believed Anderson was reaching for a gun.

Davis cooperated with law enforcement and led them to several pieces of critical evidence, including the gun that Sims used to kill Anderson. The information Davis provided also enabled law enforcement to recover several items that had belonged to Anderson; these items were found in a dumpster behind the church Sims's mother attends.

## II.

At trial, Sims testified he and Anderson had lived near each other on Monticello Road in Richland County. Although they had occasional arguments, Sims stated they had been friends for several years. Sims testified that Anderson had "quite a few guns," and a few weeks before his death, Anderson had threatened Sims "over some money."

According to Sims, around 1:00 a.m. on December 31, 2003, Anderson offered to take him home from the party. Sims contended Anderson had "a little gun in his hand" when he got into the car. Sims acknowledged that he also was carrying a gun: "I have got shot in the past. So I usually carry my gun with me." Sims testified that as they turned into his driveway:

[Anderson] was telling me that he was going to end all his beefs before the New Year. And he was reaching underneath his seat. So I thought he was fixing to ... grab him a gun and shoot me. So I pulled out my gun. Out of fear I shot.

Sims added: "I didn't mean to kill him. I was pulling my gun out because I thought he was fixing to kill me." Sims stated he did not realize until after he had fired that "I had just shot an unarmed man, so I was scared."

Sims said that following Anderson's shooting, he told his girlfriend, English, "something happened between me and [Anderson]." Sims stated he and English drove to Newberry because he wanted to ask his friend Ruff what he should do. English drove her car, and Sims drove Anderson's car, which contained Anderson's body. After Sims and Ruff talked, they left to dispose of Anderson's body. After dumping the body in the pond, Sims testified, "we left [the car] in Columbia."

Sims acknowledged that he gave several false statements to law enforcement in January of 2004. He admitted at trial: "I

lied. I was scared." Sims said he was afraid to be truthful because "I had shot Brian [Anderson] and then I had seen he didn't have no gun." On January 22, 2004, Sims acknowledged shooting Anderson but, again, his statement was not truthful: "I told them when we had got in my driveway and Brian had pulled a gun out on me." At trial, Sims admitted, "I was lying because when I seen he had no gun I was scared."

Ruff and Davis testified at trial and acknowledged helping Sims hide Anderson's body and destroy evidence. Sims's other coconspirator, English, did not testify.

Davis testified extensively regarding the events that followed Anderson's death. According to Davis, around 3:00 a.m., English and Sims knocked on the door of the home she shared with Ruff and his mother. After Sims woke Ruff, he and Sims spoke privately. Davis claimed at this point she was not aware of the killing or that her friends were planning to help Sims dispose of Anderson's body: "She [English] wouldn't tell me what was going on. And so she asked me if I wanted to go to Charleston. And I told her, yeah...." Davis stated Sims searched for bricks in Ruff's yard. After leaving Ruff's home, they stopped at a gas station for English to buy "gloves and stuff."

Next, they drove down a dirt road and parked in front of a house. Davis maintained that she still was unaware of the killing or the real purpose of the trip. Shortly after Sims and Ruff exited the car, Davis observed them "toting like this long thing I guess to a car, and a chain, you know, some bricks, just toting it to the back of the house...." Davis continued:

> The next thing I knew he [Sims] sped from behind the house inside of another car. And that's when I, you know, started pushing Natalie [English]. I'm asking her what's going on? Did he steal a car or what's going on? Where did he get that from and stuff like that. **And then she told me, you know, Keith had murdered somebody.** But I didn't, you know—

Sims's counsel objected to this portion of Davis's testimony on the ground of hearsay. Without comment, the trial court overruled Sims's general hearsay objection.

Davis's testimony continued, stating they drove English's car to a park, where they met Sims, who had driven Anderson's car. According to Davis, as Sims opened the door to Anderson's car, "the guy, he just fell out." Although Davis contended she had been "unable to think," she admitted that she had helped Sims, English, and Ruff drag Anderson's body to the pond and throw him in.

Before leaving the park, Sims gave Davis a bag containing Anderson's cell phone, chain, and wallet. Sims then drove Anderson's car to Columbia, while Ruff, English, and Davis drove English's car to Charleston. After arriving in Charleston, Davis disposed of the bag and Sims's bloody clothes. They promptly returned to Columbia and met Sims at a friend's apartment. Sims rejoined the group and they drove together to Newberry.

Sims told Davis to dispose of the gun, which he had wrapped in a shirt. Davis testified she and English drove to Columbia to attend church with Sims's mother. Sims and Ruff remained in Newberry. While English and Davis were driving to Columbia, Davis disposed of the gun. When they reached the church, Davis threw several items from Anderson's car into a dumpster behind the church.

Ruff testified and confirmed that he had participated with Sims, English, and Davis in hiding the body and disposing of the evidence.

The court charged the jury on murder, voluntary manslaughter, and self-defense. Sims was convicted of murder and sentenced. The court of appeals affirmed, to which we granted a writ of certiorari.

### III.

■ Sims contends that the trial judge committed reversible error by allowing Davis to testify that English, a nontestifying third party, told her "Keith [Sims] had murdered somebody" because this evidence violated Rule 802, the rule against hearsay. The court of appeals analyzed the issue in terms of Rule 801(d)(2)(E), the coconspirator exception and found no error in the admission of the statement attributed to English.

■ An appellate court reviews challenges to the admission and exclusion of evidence for an abuse of discretion. *See State v. Gaster*, 349 S.C. 545, 557, 564 S.E.2d 87, 93 (2002) ("The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion."). We agree with Sims that the challenged testimony was inadmissible hearsay, but in view of the overwhelming evidence of guilt, we find the error harmless.

## A.

### Hearsay

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), SCRE. Generally, hearsay is not admissible evidence "except as provided by these rules or by other rules prescribed by the Supreme Court of this State or by statute." Rule 802, SCRE.

Because of the generic nature of Sims's hearsay objection and the trial court's one word ruling—"overruled"—we do not have the benefit of any analysis in the trial court concerning Rule 801(d)(2)(E), SCRE. The first vetting of the evidentiary challenge occurred on appeal.

## B.

### Coconspirator Exception to the Rule against Hearsay

■ A conspiracy is "a combination or agreement between two or more persons for the purpose of accomplishing a criminal or unlawful object, or achieving by criminal or unlawful means an object that is neither criminal nor unlawful. The essence of a conspiracy is the agreement." *State v. Buckmon*, 347 S.C. 316, 323, 555 S.E.2d 402, 405 (2001) (internal citation omitted).

While hearsay testimony generally is not admissible, an exception is allowed when a statement is offered against a party and is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Rule 801(d)(2)(E), SCRE. When a statement meets these requirements, it is considered non-hearsay.

■ The court of appeals concluded the challenged statement was not hearsay because it was made by one coconspirator (English) to another member of the conspiracy (Davis), and it occurred "during the course and in furtherance of the conspiracy." The court of appeals opinion concluded:

> We rule the trial judge properly allowed one co-conspirator to testify to another co-conspirator's statement relating to appellant's [Sims's] own statement of guilt because the statement was calculated to induce participation in the combined and joint effort to dispose of the victim's body, the gun, and other evidence of murder. We hold the statement was **NOT** hearsay, but constituted relevant and admissible probative evidence in this murder.

*Sims*, 377 S.C. at 612–13, 661 S.E.2d at 130 (emphasis in original).[2]

The State urges us to accept the court of appeals view that Davis's statement was admissible under the coconspirator exception to the hearsay rule. We agree with the court of appeals that the evidence establishes the existence of a conspiracy and that English's purported statement to Davis was made during the course of the conspiracy.[3] We part company with the court of appeals only as it relates to Rule 801(d)(2)(E)'s requirement that the statement be made "in furtherance of the conspiracy."

■ Concerning the "in furtherance of" prong, our law provides that "a statement by a co-conspirator must advance the conspiracy to be admissible under Rule 801(d)(2)(E)."

---

**2.** The holding of the court of appeals warrants a correction and a clarification. First, the court of appeals erred in referring to English's statement to Davis as Sims's "own statement of guilt." We view this as a scrivener's error, for the coconspirator analysis in the court of appeals opinion correctly attributes the statement to English. We further clarify that Davis's status as a coconspirator was not relevant to the analysis of the admissibility of English's statement. A statement made by a coconspirator to (or overheard by) a third party who is not a member of the conspiracy may be admissible, provided the statement was made during the course and in furtherance of the conspiracy. *See State v. Anders*, 331 S.C. 474, 503 S.E.2d 443 (1998); *United States v. Shores*, 33 F.3d 438, 444 (4th Cir.1994).

**3.** During oral argument, Sims's counsel acknowledged that Sims "enlisted" English, Ruff and Davis to dispose of Anderson's body and other evidence.

*State v. Gilchrist*, 342 S.C. 369, 372, 536 S.E.2d 868, 869 (2000) (internal citation omitted). "While mere conversation or narrative declarations are not admissible under this rule, statements made to induce enlistment, further participation, prompt further action, allay fears, or keep coconspirators abreast of an ongoing conspiracy's activities are admissible." *Id.* at 372, 536 S.E.2d at 869 (quoting *United States v. Arias–Villanueva*, 998 F.2d 1491, 1502 (9th Cir.1993)).

In *State v. Anders,* a witness testified that she overheard a coconspirator of Anders say that Anders "was going to pay him big for blowing up the building." 331 S.C. 474, 476, 503 S.E.2d 443, 444 (1998). We held that "even if made **during** the conspiracy, the statement in no way **advanced** the conspiracy." *Id.* at 476–77, 503 S.E.2d at 444 (emphasis in original). In *Anders,* we noted that our jurisprudence in this area mirrored that in other jurisdictions. *See United States v. Pallais,* 921 F.2d 684, 688 (7th Cir.1990) ("Mere chitchat, casual admissions of culpability, and other noise and static in the information stream are not admissible."); *United States v. Posner,* 764 F.2d 1535, 1538 (11th Cir.1985) (stating a letter that "spilled the beans" regarding a tax scheme "could hardly be considered to have advanced any object of the conspiracy"). Caselaw subsequent to *Anders* remains in accord. *See United States v. Pratt,* 239 F.3d 640, 643 (4th Cir.2001) ("Idle conversation that touches on, but does not further, the purposes of the conspiracy does not constitute a statement in furtherance of a conspiracy under Rule 801(d)(2)(E).").

While English's challenged statement was made during the conspiracy, it was not made in furtherance of the conspiracy. The statement neither advanced the conspiracy nor was intended to further induce Davis's participation in the conspiracy. English's statement that Sims had "murdered somebody" was simply part of her narrative, best described as "spilling the beans." *See Posner,* 764 F.2d at 1538. We thus conclude the statement was not admissible under Rule 801(d)(2)(E).

## C.

### Harmless Error

While we agree with Sims that the statement is inadmissible hearsay, we find the error harmless in view of the

overwhelming evidence of guilt. "Generally, appellate courts will not set aside convictions due to insubstantial errors not affecting the result." *State v. Pagan,* 369 S.C. 201, 212, 631 S.E.2d 262, 267 (2006) (citing *State v. Sherard,* 303 S.C. 172, 176, 399 S.E.2d 595, 597 (1991)). "[A]n insubstantial error not affecting the result of the trial is harmless where 'guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached.'" *Id.* at 212, 631 S.E.2d at 267 (quoting *State v. Bailey,* 298 S.C. 1, 5, 377 S.E.2d 581, 584 (1989)).

Sims was able to fully develop a theory of self-defense by stating repeatedly: "I thought he was reaching for his gun to shoot and kill me. So out of fear I pulled my gun out and shot"; "I didn't mean to kill him.... I guess just out of—out of fear I shot"; and "I had shot Brian and then I had seen he didn't have no gun."

Moreover, English's statement that Sims "had murdered somebody" is properly viewed as a colloquial expression that Sims had killed Anderson, without regard to the legal niceties distinguishing murder from other forms of homicide.

The trial court charged the jury on the law of murder, voluntary manslaughter, and self-defense. During deliberations, the jury asked the court to provide a "concise definition" of only murder and manslaughter. Without objection, the court provided the jury with the written instructions, after which the jury returned a guilty verdict for murder. A careful review of the record convinces us that the murder conviction was the product of overwhelming evidence of guilt and the jury's thoughtful consideration of the law. We reject any suggestion that the jury, during the course of this four-day trial, merely assented to the "murder" reference in Davis's lengthy testimony.

## IV.

In sum, because the challenged testimony was not "in furtherance of" the conspiracy, we hold the testimony was not admissible under the coconspirator exception of Rule 801(d)(2)(E). We hold, however, that the error was harmless. We affirm the court of appeals in result.

**AFFIRMED IN RESULT.**

568

PLEICONES and BEATTY, JJ., concur.

TOAL, C.J., concurring in a separate opinion in which HEARN, J., concurs.

Chief Justice TOAL, concurring.

I concur in the majority's result, but respectfully disagree with its reasoning. I would hold that the trial judge did not err in allowing Davis to testify that English told her "Keith [Sims] had murdered somebody." In my view, the court of appeals correctly analyzed this issue, finding that English's statement was admissible under SCRE 801(d)(2)(E), the co-conspirator exception to the rule against hearsay. Therefore, I would affirm the court of appeals in every respect and not reach a harmless error analysis.

HEARN, J., concurs.