# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Tony Orlanda Singleton, Appellant.

Appellate Case No. 2019-001391

———————

Appeal From Hampton County
Carmen T. Mullen, Circuit Court Judge

———————

Opinion No. 5961
Heard October 5, 2022 – Filed January 18, 2023

———————

## AFFIRMED

———————

Appellate Defender Susan Barber Hackett, of Columbia,
for Appellant.

Attorney General Alan McCrory Wilson and Senior
Assistant Attorney General David A. Spencer, both of
Columbia, and Solicitor Isaac McDuffie Stone, III, of
Bluffton, all for Respondent.

———————

**KONDOUROS, J.:** Tony O. Singleton appeals his conviction for first-degree
criminal sexual conduct with a minor[1] (Victim). Singleton contends that the trial
court erred in (1) admitting into evidence a photograph of Victim taken when she

---

[1] *See* S.C. Code Ann. § 16-3-655(A)(1) (2015).

was ten years old; (2) denying his mistrial motion; and (3) failing to instruct the jury on third-party guilt.  We affirm.

## FACTS

In April 2016, Victim went to visit her grandmother (Grandmother).  Grandmother noticed that Victim, who was ten years old, appeared pregnant.  Grandmother informed Victim's mother (Mother), and Mother took Victim to Victim's pediatric nurse practitioner.  The nurse practitioner observed Victim's enlarged abdomen and administered a pregnancy test that confirmed Victim was pregnant.  On April 14, 2016, an ultrasound revealed that Victim was around twenty-two weeks pregnant.  Mother and Victim's doctors decided to terminate the pregnancy.

While treating Victim, the nurse practitioner asked Victim if anybody had ever "touched" her.  Victim eventually responded that someone her age had "touched" her, and Mother told the nurse practitioner there were no older men who could have impregnated Victim in their home.  However, Victim later told counselors that Singleton and two juvenile males, one of whom was Singleton's oldest son, had sexual intercourse with her.  Law enforcement obtained DNA samples from Singleton and the two juveniles, and a forensic scientist with the South Carolina Law Enforcement Division (SLED) compared those DNA samples to a DNA sample from the aborted fetus.  The SLED scientist concluded that Singleton was the father of Victim's unborn child.

On February 6, 2017, a Hampton County grand jury indicted Singleton for first-degree criminal sexual conduct with a minor.  Singleton moved in limine to prevent the State from introducing a photograph of Victim that was taken when she was ten years old, objecting under Rules 401, 402, and 403 of the South Carolina Rules of Evidence.  The State contended the photograph merely showed Victim's face when she was ten years old.[2]  The trial court ruled that the State could introduce the photograph, deeming it "adequate" and "appropriate."

During Singleton's opening statement, Victim began crying.  The victim's advocate escorted Victim from the courtroom while Singleton continued his opening statement.  After Singleton concluded his opening statement, he moved for a mistrial.  Singleton noted that Victim's crying was "audible" and "created a

---

[2] Victim was thirteen years old when Singleton's trial began on August 5, 2019.  **(R.1-2, 57).**

disturbance."  Singleton asserted that a curative instruction could not obviate the damage that the level of emotion Victim displayed caused to Singleton's right to a fair trial.

The State replied that it was "unfair to expect . . . [V]ictim to always be able to keep her emotions in check."  The State also maintained that Victim "was led out of the courtroom as soon as it got out of control" and noted that "obviously[,] it's [an] emotionally charged situation."  The trial court noted that Victim's reaction could have occurred while she was testifying and declined Singleton's motion without giving a curative instruction.[3]  However, the trial court cautioned the State to consider whether Victim should only be present while testifying.

During the State's case-in-chief, Mother testified that she was in a relationship with Singleton for about eight years, and he lived in her home with Victim and five of Victim's siblings[4] for about three years.  Mother explained that while Singleton occasionally moved out of her apartment for a week or two, he primarily lived in her home until shortly before Victim's pregnancy was discovered.  The State also showed Victim the contested photograph, and Victim testified that she was ten years old when it was taken.  The photograph was then admitted into evidence.

Additionally, the SLED scientist who analyzed the DNA samples testified that she concluded Singleton was the father of Victim's unborn child.  Singleton extensively cross-examined the SLED scientist on whether Singleton's oldest son could be the father instead because he inherited half of his DNA from Singleton.  The SLED scientist maintained that her analysis of the DNA samples excluded Singleton's oldest son from being the father.

After the State rested, Singleton made a motion for a directed verdict that the trial court denied.  During Singleton's case-in-chief, he presented testimony that he moved out of Mother's home before Victim became pregnant in late 2015.  The mother of Singleton's oldest son testified that Singleton moved in with his sister in October 2015, and Singleton testified that he moved out of Mother's apartment "right after the summer."  Singleton also denied having sexual intercourse with Victim.

After Singleton rested, he renewed his motions for a mistrial and directed verdict. The trial court responded, "Respectfully, based on the earlier ruling, again, I think

---

[3] Singleton did not request a curative instruction.

[4] Singleton and Mother were the biological parents of three of these siblings.

there's evidence by which this jury can determine Mr. Singleton is guilty of criminal sexual conduct with a minor under the age of 11. I'm going to send it to a jury." Singleton also requested the trial court instruct the jury on third-party guilt, and the trial court initially indicated that it would give the instruction. However, the trial court declined to give the instruction after it determined the instruction was not in the South Carolina bench book.

The jury found Singleton guilty of first-degree criminal sexual conduct with a minor, and the trial court sentenced Singleton to life imprisonment. Singleton moved for a new trial, alleging the trial court erred in failing to grant his motion for a mistrial due to Victim's "emotional outburst" and failing to instruct the jury on third-party guilt. The trial court denied Singleton's motion based on its prior decisions. Regarding Victim's display of emotion during Singleton's opening statement, the trial court stated the following for the record:

> I will not characterize it in any way as an outburst. [Victim] just began crying, and she was not removed from the courtroom by me. The victim's advocate, in her wisdom, just gently took her and walked her out of the courtroom as she should, and did a good job doing it. So, that was just the way it was handled. So, I don't think it was outwardly disruptive, and I know it's one of the things the [a]ppellate [c]ourts look at it, you don't know if you weren't here exactly how it happened. So, I will say it was minimal.

This appeal followed.

## STANDARD OF REVIEW

"The conduct of a criminal trial is left largely to the sound discretion of the trial [court; it] will not be reversed in the absence of a prejudicial abuse of discretion." *State v. Reyes*, 432 S.C. 394, 401, 853 S.E.2d 334, 337 (2020) (quoting *State v. Bryant*, 372 S.C. 305, 312, 642 S.E.2d 582, 586 (2007)). "An abuse of discretion occurs when a trial court's decision is unsupported by the evidence or controlled by an error of law." *Id.* at 401, 853 S.E.2d at 338 (quoting *Bryant*, 372 S.C. at 312, 642 S.E.2d at 586).

## LAW/ANALYSIS

## I. Admitted Photograph

Singleton asserts that the trial court erred in admitting into evidence a photograph of Victim taken when she was ten years old. We do not address that argument because even if the trial court erred in admitting the photograph into evidence, that error was harmless.

"Generally, appellate courts will not set aside convictions due to insubstantial errors not affecting the result." *State v. Sims*, 387 S.C. 557, 567, 694 S.E.2d 9, 14 (2010) (quoting *State v. Pagan,* 369 S.C. 201, 212, 631 S.E.2d 262, 267 (2006)). "[A]n insubstantial error not affecting the result of the trial is harmless where 'guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached.'" *Id.* at 567, 694 S.E.2d at 14-15 (alteration in original) (quoting *Pagan*, 369 S.C. at 212, 631 S.E.2d at 267). "[T]he harmless error rule embodies a commonsense principle our appellate courts have long recognized— 'whatever doesn't make any difference, doesn't matter.'" *Reyes*, 432 S.C. at 406, 853 S.E.2d at 340 (quoting *State v. Jolly*, 304 S.C. 34, 39, 402 S.E.2d 895, 898 (Ct. App. 1991)).

Assuming without determining that the trial court erred in admitting the photograph into evidence, that error was harmless because the State presented overwhelming evidence that Singleton was guilty of first-degree criminal sexual conduct with a minor. A person is guilty of criminal sexual conduct with a minor in the first degree if they engage in sexual battery with a victim who is less than eleven years old. § 16-3-655(A)(1). The parties did not dispute that Victim was ten years old when she became pregnant, and the SLED scientist who analyzed the DNA samples testified that she concluded Singleton was the father of Victim's unborn child. Therefore, even if the photograph was wrongly admitted, it did not affect the result of Singleton's trial. Accordingly, we affirm as to this issue.

## II. Failure to Grant a Mistrial

Singleton asserts that the trial court erred in denying his mistrial motion. Singleton argues that the trial court's denial of his mistrial motion violated his right to a fair trial because Victim began crying and was escorted out of the courtroom during his opening statement. We disagree.

"The decision whether to grant a mistrial because of a witness's outburst rests within the sound discretion of the trial [court] and will not be reversed absent an abuse of discretion or manifest prejudice to the complaining party." *State v.*

*Anderson*, 322 S.C. 89, 91-92, 470 S.E.2d 103, 105 (1996). "Granting a mistrial is a serious and extreme measure which should only be taken when the prejudice can be removed no other way." *State v. Makins*, 433 S.C. 494, 500, 860 S.E.2d 666, 670 (2021).

In *Anderson*, the sister of a murder victim was the first witness to testify for the State. 322 S.C. at 90, 470 S.E.2d at 104. While testifying, the victim's sister asked the defendant, "Why did you do it?" *Id.* She also stated that the defendant "didn't have to take her life." *Id.* Our supreme court noted that the trial court immediately dismissed the jury and called a recess to allow the witness to calm down. *Id.* at 93, 470 S.E.2d at 105. Our supreme court also noted that "th[e] incident occurred at the beginning of trial and was very limited in time and in scope." *Id.* Our supreme court explained that the jury likely understood that the witness's outburst was "an expression of grief over the death of her sister." *Id.* Our supreme court concluded, "Given that the trial [court] was in the best position to assess the degree to which the jury may have been prejudiced by the outburst, [it] did not abuse [its] discretion in denying [the defendant's] mistrial motion." *Id.* at 93, 470 S.E.2d at 105-06.

Here, the trial court did not abuse its discretion in refusing to grant Singleton's mistrial motion. Victim's display of emotion was significantly less than the level of emotion displayed in *Anderson*. Unlike the witness in *Anderson*, Victim did not directly address Singleton or comment on the alleged crime; instead, Victim began crying, and the victim's advocate escorted her out of the courtroom. While the record indicates that Victim's crying was audible, the trial court stated that it "would not characterize [Victim's display of emotion] as an outburst." Like the incident in *Anderson*, the trial court explained that the incident was "minimal." The trial court was in the best position to assess whether Victim's display of emotion warranted a mistrial; it did not abuse its discretion in denying Singleton's mistrial motion. Therefore, we affirm as to this issue.

## III. Third-Party Guilt Jury Instruction

Singleton asserts that the trial court erred in failing to instruct the jury on third-party guilt because the parties presented sufficient evidence to warrant the instruction. We disagree.

"[T]he trial court is required to charge only the current and correct law of South Carolina." *State v. Marin*, 415 S.C. 475, 482, 783 S.E.2d 808, 812 (2016) (alteration in original) (quoting *State v. Brandt*, 393 S.C. 526, 549, 713 S.E.2d 591, 603 (2011)). "[T]o warrant reversal, a trial [court]'s refusal to give a requested jury

charge must be both erroneous and prejudicial to the defendant." *Id.* (quoting *Brandt*, 393 S.C. at 550, 713 S.E.2d at 603).

"[E]vidence of third-party guilt that only tends to raise a conjectural inference that the third party, rather than the defendant, committed the crime should be excluded." *State v. Cope*, 405 S.C. 317, 341, 748 S.E.2d 194, 206 (2013) (citing *State v. Gregory,* 198 S.C. 98, 105, 16 S.E.2d 532, 534 (1941)). "[T]o be admissible, evidence of third-party guilt must be 'limited to such facts as are inconsistent with [the defendant's] own guilt, and to such facts as raise a reasonable inference or presumption as to his own innocence.'" *Id.* (second alteration in original) (quoting *Gregory*, 198 S.C. at 104, 16 S.E.2d at 534).

The trial court did not abuse its discretion in refusing to instruct the jury on third-party guilt. Singleton relies on evidence that others had sexual intercourse with Victim, but that evidence is not a fact that is *inconsistent* with Singleton's guilt or raises a reasonable inference or presumption as to his innocence. Even if Singleton was not the father of Victim's unborn child, evidence that someone else impregnated Victim would not preclude Singleton from being guilty of first-degree criminal sexual conduct with a minor; Singleton could have also had sexual intercourse with Victim without impregnating her. Therefore, we affirm as to this issue.

**CONCLUSION**

In short, the contested photograph did not prejudice Singleton, and the trial court did not abuse its discretion in denying Singleton's mistrial motion or refusing to instruct the jury on third-party guilt. Accordingly, Singleton's conviction is

**AFFIRMED.**

**HEWITT and VINSON, JJ., concur.**