539 S.E.2d 391

**Jeffery McFADDEN, Petitioner,**

v.

**STATE of South Carolina, Respondent.**

No. 25206.

Supreme Court of South Carolina.

Submitted Sept. 20, 2000.
Decided Oct. 30, 2000.

638

Chief Attorney Daniel T. Stacey and Assistant Appellate Defender Katherine Carruth Link, both of South Carolina Office of Appellate Defense, of Columbia, for petitioner.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General G. Robert DeLoach, and Assistant Attorney General J. Benjamin Aplin, all of Columbia, for respondent.

TOAL, Chief Justice:

Jeffery McFadden ("Petitioner") appeals the denial of his application for Post Conviction Relief ("PCR").

## FACTUAL/PROCEDURAL BACKGROUND

In January of 1994, the Williamsburg County grand jury indicted Petitioner for distribution of crack cocaine and distribution of crack cocaine within proximity of a school. The indictment followed the alleged sale of crack cocaine by Petitioner to an undercover police officer. A jury trial was held on September 1, 1994. The jury found Petitioner guilty on both counts. Petitioner was sentenced to imprisonment for 15 years and payment of a $25,000 fine for distribution, and 10 years for distribution within proximity of a school, sentences to be served concurrently. The Court of Appeals affirmed Petitioner's conviction pursuant to *Anders*. Petitioner then

filed an application for PCR alleging ineffective assistance of counsel. This Court granted certiorari on the following issues:

1. Was Petitioner's counsel ineffective in failing to object to the solicitor's closing argument alluding to Petitioner's failure to present a defense?

2. Was Petitioner's counsel ineffective in failing to request a jury charge pursuant to *State v. Jackson*, and in failing to object to solicitor's closing argument that Petitioner's absence from trial was evidence of his guilt?

## LAW/ANALYSIS

### I. Failure to Present a Defense

■ Petitioner argues his trial counsel was ineffective in failing to object to the solicitor's closing argument, which in effect constituted a comment on Petitioner's right to remain silent. We agree.

In his closing argument to the jury, the solicitor stated, "In this particular case, the state only has one opportunity in which to argue their case, *because there is no defense presented.* And the only reason I mentioned it is *because no defense has been presented because this defendant based no [sic] the evidence is guilty.*" (emphasis added). The PCR judge found these remarks were "simply an explanation of how closing arguments would proceed and why." The solicitor's comments were more than an explanation of closing arguments, they were an indirect comment on the defendant's constitutional right to remain silent. *See Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (an accused has the right to remain silent and the exercise of that right cannot be used against him).

■ The State may not comment on a defendant's exercise of a constitutional right. *Edmond v. State,* 341 S.C. 340, 534 S.E.2d 682 (2000). Specifically, the solicitor must not comment, either directly or indirectly, on a defendant's silence, failure to testify, or failure to present a defense. *State v. Cooper,* 334 S.C. 540, 514 S.E.2d 584 (1999); *Johnson v. State,* 325 S.C. 182, 480 S.E.2d 733 (1997); *see also Doyle v. Ohio, supra* (right to remain silent); *Griffin v. California,* 380

U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) (Fifth and Fourteenth Amendments forbids comment by the prosecution on the accused's silence).

■ In a PCR action, "a PCR applicant has the burden of proving counsel's representation fell below an objective standard of reasonableness and, but for counsel's errors, there is a reasonable probability that the result at trial would have been different . . . [A] reasonable probability is a probability sufficient to undermine confidence in the outcome of trial." *Johnson, supra* at 186, 480 S.E.2d at 735 (citations omitted). Counsel was deficient in failing to object to the solicitor's improper comment on Petitioner's exercise of a constitutional right. However, Petitioner must still prove he was prejudiced by his counsel's failure to object.

■ When a *Doyle* violation has occurred, the prejudice prong of the PCR analysis runs parallel to the harmless error analysis applied in a direct appeal. *Edmond, supra; State v. Pickens,* 320 S.C. 528, 466 S.E.2d 364 (1996); *State v. Truesdale,* 285 S.C. 13, 328 S.E.2d 53 (1984). In deciding whether counsel's error was harmless, the Court looks to the factors set forth in *Truesdale* and *Pickens. See Edmond, supra.* In *Truesdale* and *Pickens,* this Court held that several factors should be considered in analyzing whether a *Doyle* violation was harmless: (1) the reference to the defendant's right to remain silent was a single reference, which was not repeated or alluded to; (2) the solicitor did not tie the defendant's silence directly to his exculpatory story; (3) the exculpatory story was totally implausible; and (4) the evidence of guilt was overwhelming. Although in this case the reference to Petitioner's failure to present a defense was a single reference,[1] his exculpatory story was not totally implausible, and the evidence of guilt was not overwhelming.[2] Therefore, the error

---

1. However, the solicitor made further comments on Petitioner's absence from the trial which could be construed as comments on Petitioner's right to remain silent.

2. The Williamsburg County police set up a "buy/bust" in which two men acting undercover for the state used identifiable money to make a drug purchase. The undercover officer and a Confidential Informant (CI) made a purchase from two or three men in a car. However, after the sale was made, the police officers were unable to follow the car, but

was not harmless, and Petitioner was prejudiced by his counsel's failure to object.

■ Furthermore, the trial judge's general charge to the jury on the right to remain silent did not cure the error. *See Pickens, supra* (general charge, given shortly after the improper comment, did not cure the error). The improper comment in this instance occurred in the solicitor's closing argument when he stated: "no defense has been presented because this defendant, based no [sic] the evidence, is guilty." Although this statement is akin to a comment on the right to remain silent, the judge's charge did not make this point clear to the jury.[3] Nowhere in his instructions did the trial judge inform the jury that the defendant was not required to present any evidence and that the jury could draw no adverse inference from his failure to do so. In his closing argument to

---

did get the license plate number. The only description given of the seller at the time was a "black male." Although Petitioner was wearing a very distinctive striped shirt, which should have distinguished him from the other men in the car, the police report makes no mention of his clothing. Police determined from the license plate that the car was registered to the Petitioner. Approximately half an hour later, Petitioner was stopped driving the car. At that time, an undercover officer and the (CI) identified Petitioner as the seller. They recovered a marked twenty dollar bill from Petitioner when he was arrested. The remaining two hundred and twenty dollars was never recovered. No other drugs were found on Petitioner or in the car. Petitioner claims someone else had been driving the car when the sale took place, and that the car was returned to him during the intervening half hour. This story is not totally implausible, especially since the police officer and CI who identified the Petitioner had never seen the Petitioner before, and viewed him in the dark.

3. The trial judge's exact charge to the jury included the following:

Now the fact that a defendant does not testify cannot, and must not be used against him in any way, or considered by you in any way whatsoever. And you may not consider the fact, or you must not consider the fact that the defendant has chosen not to testify when you determine the guilt or innocence of the defendant.

As I say, he has the constitutional right to remain silent. And the assertion of that constitutional right, cannot and must not be considered by you in your deliberations. So under your oath, you are to reach no inference or draw no conclusion whatsoever from the fact that this defendant did not testify in this trial. As a matter of fact, I tell you not to discuss that fact in your jury room. The burden is upon the state of South Carolina to prove guilt, rather than on the defendant to prove guilt [sic].

the jury, the solicitor improperly drew an adverse inference, directly linking the lack of a defense to guilt.

Counsel was ineffective in failing to object to the solicitor's reference to Petitioner's constitutional right to remain silent and failure to present a defense. The error was not harmless since Petitioner's exculpatory story was not completely implausible and the evidence of his guilt was not overwhelming. In addition, the trial judge's general charge to the jury was insufficient to cure the error, and it is probable that the jury drew the same improper inference from the lack of defense that the solicitor drew in his closing argument. Therefore, there is a reasonable probability that the result of the trial would have been different if counsel had properly objected and received a sufficient curative instruction.

## II. Absence at Trial

Petitioner argues counsel was ineffective in not requesting a charge pursuant to *State v. Jackson* and in failing to object to solicitor's closing argument that Petitioner's absence from trial was evidence of his guilt[4]. We agree.

In *Jackson*, this court held, "[w]hen a defendant is tried *in absentia*, the trial court should instruct the jury that the defendant's failure to appear may not be construed as an admission of guilt." *State v. Jackson*, 301 S.C. 49, 50, 389 S.E.2d 654, 655 (1990). The PCR judge found that this was not a case where the defendant "failed to appear," and therefore Petitioner was not entitled to a *Jackson* charge. The judge found the Petitioner absented himself voluntarily, and thereby waived his right to be present. Finally, the PCR judge found that even if the Petitioner was entitled to a *Jackson* charge, the trial judge's general charge on the State's burden of proof, petitioner's right to remain silent, and presumption of innocence were sufficient to encompass the rule that a defendant's failure to appear cannot be construed as an admission of guilt.

---

4. Although present for jury selection, Petitioner left the courthouse during a break before the trial began and did not return. At the PCR hearing, Petitioner testified he left because he was instructed by counsel to find a witness.

 When the defendant appears but does not remain for the trial after jury selection a *Jackson* instruction is still required. There is no significant difference between a defendant who does not appear in the first instance, and one who appears for part of the trial and then leaves. Therefore, counsel should have requested a *Jackson* charge. Furthermore, Petitioner suffered prejudice as a result of his counsel's deficient performance. The trial judge's general charge to the jury did not sufficiently instruct the jury that it could not give weight to the Petitioner's absence in deciding the question of guilt, especially in light of the solicitor's closing argument that it could be so considered.

 In his closing argument to the jury, the solicitor made the following comments:

And one part of it, if you want to consider, in addition to all the evidence that was presented, is the fact that the defendant was here at this trial when we started to selecting the jury. Then because he is out on bond, he has the freedom to be able to leave. And he decided not to wait on this verdict to leave. And it's for you to decide what does that indicate regarding his own knowledge of the fact that he was guilty as charged. And I'll leave it at that, and let y'all weigh that . . .

And nonetheless, so he decided to skip out of the trial. So he certainly should not be rewarded for that.

*Jackson* expressly guarantees that an accused's absence from trial cannot be used as evidence of guilt. The solicitor's argument, however, directly tells the jury that it *can* consider such evidence.

The PCR judge found the solicitor's comments were permissible comments on a defendant's "flight," citing *State v. Ballenger*, 322 S.C. 196, 470 S.E.2d 851 (1996), and *State v. Grant*, 275 S.C. 404, 272 S.E.2d 169 (1980). In *Grant* this Court held "it is oftentimes appropriate for counsel to argue to the jury the inference growing out of flight." *Grant, supra* at 404, 272 S.E.2d 169. However, the line of "flight" cases are distinguishable from and inapplicable to the case at hand. *Grant* and *Ballenger* involved flight from the scene of a crime. In light of this Court's holding in *Jackson*, flight from a police officer or a crime scene as a means of escape is an entirely

different matter than failure to appear at a trial. The trial judge should not have permitted the solicitor to argue that Petitioner's "flight" from the courtroom was evidence of guilt, and defense counsel was clearly deficient in failing to object. Furthermore, the trial judge's general instruction did not cure the effect of the improper argument on the jury.

Petitioner suffered prejudice as a result of counsel's failure to object to the solicitor's argument as well as his failure to request a *Jackson* charge. There is a reasonable probability that the outcome of the trial would have been different if the errors were not committed. The jury believed that they could consider Petitioner's absence from trial as well as his failure to present a defense as evidence of his guilt. The jury's verdict was unquestionably influenced by improper argument.

## CONCLUSION

For the forgoing reasons, we **REVERSE** the PCR court and **REMAND** for a new trial.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.