631 S.E.2d 262

The STATE, Respondent,

v.

Charles PAGAN, Petitioner.

No. 26172.

Supreme Court of South Carolina.

Heard April 5, 2006.

Decided June 19, 2006.

Rehearing Denied July 10, 2006.

204

Deputy Chief Attorney Joseph L. Savitz, III, of South Carolina Office of Appellate Defense, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General S. Creighton Waters; and Acting Solicitor W. Barney Giese, all of Columbia, for Respondent.

Justice BURNETT:

Charles Pagan (Petitioner) was convicted of the murder of Gloria Cummings (the victim), and was sentenced to life imprisonment. We granted Petitioner's petition for writ of certiorari to review the Court of Appeals' decision. *State v. Pagan*, 357 S.C. 132, 591 S.E.2d 646 (Ct.App.2004). We affirm as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

The victim's body was discovered in a vacant lot in Florence County about 8 a.m. on December 11, 1997. A police officer testified the victim's head had been severely beaten and her pants were down around her ankles. Dr. Edward Proctor, a forensic pathologist, performed an autopsy on the victim's body and opined the cause of death was massive blunt force injury to the head.

An investigation revealed semen found on the victim's pants and body belonged to Stephen Blathers, who lived near the vacant lot where the victim's body was discovered. When confronted with the results of the investigation, Blathers admitted having sex with the victim on the night of the murder. He further testified he heard screaming outside his house about 2 a.m. that night and he saw a shadow run across the yard. Blathers thought the shadow was the same man he had previously seen with the victim on the night of the murder, and he later identified Petitioner as that man.

Jessie Jones, who also lived near the vacant lot, testified that about 2 a.m. on December 11, he heard people hitting a sign outside his house, and he told the people to leave. He then observed a man and a woman hitting each other with

sticks, and thought they were arguing over money. Jones did not think the man arguing with the woman was Blathers because Blathers is five feet tall and the man he saw was six feet tall.

On December 11 and 13, 1997, Monique Ellerbee Cooks called Crime Stoppers and reported she went to a club with the victim on the night of the murder. Cooks reported the victim left the club with a man, gave a detailed description of the man, and said she did not see them again. Cooks subsequently met with a forensic artist who drew a composite sketch of the man she saw with the victim. Cooks was also shown a photographic lineup with Petitioner in it; however, she did not identify anyone.

At trial, Cooks testified she was with the victim on the night of the murder. Cooks went to White Sands, a bar, while the victim stayed outside to talk to a man. When Cooks left the bar, she decided to follow the victim and the man because they were leaving together. Cooks testified she thought the victim and the man were arguing over money and drugs. At some point during the walk, the victim and the man began hitting each other with sticks. Cooks testified the victim and the man moved toward a vacant lot when Jones yelled for the people to stop hitting a sign. The man continued hitting the victim and began dragging her. Cooks testified she offered to pay the man, but he did not want her money. The man then told the victim if she did not pay him, he would beat the money out of her. When the victim ran away, the man pursued her, caught her, then began to pull off her clothes, and beat her on the head with a board.

Cooks identified Petitioner in court as the man she saw beat the victim to death. Cooks testified she did not originally report that she had witnessed the murder and she did not initially identify Petitioner in the photographic lineup because she was scared.

Petitioner's defense was alibi and he argued the evidence did not point to him as the murderer. He testified his wife dropped him off at White Sands on the evening of December 10, 1997. He left White Sands between 10 and 10:30 p.m. and went to the Pub, where he talked to Leroy Jones and Darren Burgess. After about an hour, he called his wife to pick him

up and approximately thirty minutes later she arrived at the Pub. Jones, Burgess, and Petitioner's wife corroborated Petitioner's testimony regarding when he arrived and departed the Pub. His wife also testified Petitioner was at home for the rest of the night.

Petitioner was arrested by the United States Marshals in New Jersey on February 20, 1998, and extradited to South Carolina. He was subsequently released on bond.

Tamika Lambert testified on February 16, 1999, she was walking down a street in Florence when a man named "Derrick" picked her up in a vehicle. She testified a police officer attempted to pull them over and Derrick sped away eventually wrecking the car. Derrick then ran from the scene, but Lambert was detained by the police. Later that night, Lambert ran into Derrick and he apologized to her. He told her he ran from the police because he did not have a driver's license and "they accused him of killing this girl—Well, this girl named Monique." She further testified he told her "that he was on ... a $100,000 bond because they had—This girl— They accused him of killing some girl. And it was all because of some girl named Monica." [1] After the incident, Lambert picked Petitioner out of a photographic lineup as "Derrick."

Defense counsel objected to Lambert's testimony. The trial judge allowed the testimony as evidence of identity under Rule 404(b), SCRE. The trial judge also gave the following limiting instruction: the testimony "related to the issue of identification of [Petitioner.] You can't infer that he was charged with or know about a failure to stop for blue light charge, that he's necessarily guilty of murder. There's no connection."

Lavenia Helton testified to a prior altercation between the victim and Petitioner during 1997. Helton testified the victim was leaving Helton's apartment one day with a bag of crack cocaine. Petitioner demanded the victim give him the bag of crack cocaine. When the victim complied, Petitioner told her she would die.

---

1. During Lambert's testimony, there appeared to be some confusion over whether the name was Monica or Monique.

At trial, Petitioner denied knowing the victim. He also denied ever seeing Lambert, Cooks, and Helton until they testified at trial. Petitioner further denied being involved in the February 16, 1999, failure to stop for a blue light incident.

The jury found Petitioner guilty of murder, and the Court of Appeals affirmed the conviction.

## ISSUE

Did the Court of Appeals err in affirming the trial judge's admission of testimony that, while Petitioner was out on bond for the current murder charge, he failed to stop for a blue light and later explained to a passenger in the vehicle that he had fled from the police because he was accused of killing the victim?

## STANDARD OF REVIEW

The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Gaster*, 349 S.C. 545, 557, 564 S.E.2d 87, 93 (2002). An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law. *State v. McDonald*, 343 S.C. 319, 325, 540 S.E.2d 464, 467 (2000).

## LAW AND ANALYSIS

### A. Evidence of Flight

Petitioner argues the Court of Appeals erred in affirming the admission of Lambert's testimony because the testimony did not relate to flight from the charged crime.[2] We agree.

Flight from prosecution is admissible as guilt. *State v. Thompson*, 278 S.C. 1, 292 S.E.2d 581 (1982), *overruled on other grounds by State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991) (evidence of flight admissible to show guilty knowledge, intent, and that defendant sought to avoid apprehen-

---

2. Petitioner relies on *McFadden v. State*, 342 S.C. 637, 539 S.E.2d 391 (2000). *McFadden* is not applicable to the current case because it involves the rule that, in a trial *in absentia*, the jury cannot consider the defendant's absence at trial as evidence of defendant's guilt.

sion). The critical factor to the admissibility of evidence of flight is whether the totality of the evidence creates an inference that the defendant had knowledge that he was being sought by the authorities. *State v. Beckham,* 334 S.C. 302, 315, 513 S.E.2d 606, 612 (1999). It is sufficient that circumstances justify an inference that the defendant's actions were motivated as a result of his belief that police officers were aware of his wrongdoing and were seeking him for that purpose. Flight or evasion of arrest is a circumstance to go to the jury. *Id.* (citation omitted).

■ Flight evidence is relevant when there is a nexus between the flight and the offense charged. *See State v. Robinson,* 360 S.C. 187, 195, 600 S.E.2d 100, 104 (Ct.App.2004) (citing *United States v. Beahm,* 664 F.2d 414, 419–20 (4th Cir.1981)) (evidence of flight inadmissible where a defendant flees "after 'commencement of an investigation' unrelated to the crime charged, or of which the defendant was unaware"); *United States v. Foutz,* 540 F.2d 733, 740 (4th Cir.1976) (evidence of flight should be excluded where defendant flees while being investigated for another crime), *cert. denied* Nov. 2, 2005.

The Court of Appeals found Lambert's testimony was admissible as evidence of flight. The Court of Appeals discerned the testimony was admissible to prove Petitioner was attempting to violate his bond provisions for the pending murder charge and he could identify the State's key witness. *Pagan,* 357 S.C. at 141, 591 S.E.2d at 651.

The flight evidence is not relevant in this case because there is no nexus between the flight and the current offense of murder. The evidence does not create an inference that Petitioner's alleged failure to stop for a blue light was motivated by his belief that the police officer was seeking him for his pending murder charge. *Robinson,* 360 S.C. at 195, 600 S.E.2d at 104 ("Evidence of flight should be excluded when the flight is clearly linked to a separate offense for which the defendant is not on trial."). Lambert's testimony was not admissible as evidence of flight or guilty knowledge.

### B. Corroboration Evidence

■ Petitioner argues the Court of Appeals erred in affirming the admission of Lambert's testimony based on corrobora-

tion evidence because the testimony did not corroborate Cooks' testimony. He argues even if the testimony was corroborative, it should have been excluded because the probative value did not substantially outweigh the unfair prejudice to him. We agree.

All relevant evidence is admissible. Rule 402, SCRE; *State v. Saltz*, 346 S.C. 114, 551 S.E.2d 240 (2001). Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. Relevant evidence may be excluded where its probative value is substantially outweighed by the danger of unfair prejudice. Rule 403, SCRE; *State v. Alexander*, 303 S.C. 377, 401 S.E.2d 146 (1991).

 "Corroborative testimony is testimony which tends to strengthen, confirm, or make more certain the testimony of another witness. Evidence is admissible to corroborate the testimony of a previous witness, and whether it in fact corroborates the witness' testimony is a question for the jury." *State v. Stroman*, 281 S.C. 508, 510, 316 S.E.2d 395, 397 (1984) (internal citations omitted).

The Court of Appeals found Lambert's testimony admissible as corroboration evidence of Cooks' testimony. The Court of Appeals asserted Lambert corroborated that Cooks was an eyewitness to the crime; Cooks was scared Petitioner would harm her; and Petitioner knew Cooks' identity prior to trial. *Pagan*, 357 S.C. at 142, 591 S.E.2d at 651–52.

Lambert's testimony was irrelevant to any issue presented at trial. Her testimony did not establish that Cooks was an eyewitness to the crime or that Petitioner had threatened Cooks. The testimony simply revealed that Petitioner knew he had been charged with the victim's murder and he knew the name of a witness. The Court of Appeals erred in affirming the admission of Lambert's testimony as corroboration evidence.

### C. Identity under Rule 404(b), SCRE

 Petitioner argues the Court of Appeals erred in affirming the admission of Lambert's testimony based on Rule

404(b), SCRE, because the testimony did not identify Petitioner as the victim's murderer. We agree.

Evidence of other crimes, wrongs, or acts is generally not admissible to prove the defendant's guilt for the crime charged. Such evidence is, however, admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent. Rule 404(b), SCRE; *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923). To be admissible, the bad act must logically relate to the crime with which the defendant has been charged. If the defendant was not convicted of the prior crime, evidence of the prior bad act must be clear and convincing. *State v. Beck*, 342 S.C. 129, 135–36, 536 S.E.2d 679, 682–83 (2000). Even if prior bad act evidence is clear and convincing and falls within an exception, it must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. *State v. Braxton*, 343 S.C. 629, 541 S.E.2d 833 (2001).

The trial court and the Court of Appeals found Lambert's testimony admissible under Rule 404(b), SCRE, as evidence of identity. The Court of Appeals asserted the "testimony was logically relevant as evidence of [Petitioner's] identity because it connected the murder with [Petitioner's] flight from the police one year later." *Pagan*, 357 S.C. at 144, 591 S.E.2d at 652.

The trial court erred in admitting the bad act evidence because the bad act did not logically relate to the murder. Petitioner's alleged statement to Lambert was that he fled because a female, named Monique or Monica, had accused him of murdering someone and he was out on bond for that murder charge. The failure to stop and the following explanation in no way identifies Petitioner as the person who murdered the victim. This evidence merely illustrates that Petitioner, who had already been charged with the victim's murder and released on bond for that charge, knew he had been accused of murder and knew the name of a witness in the case. *Compare Braxton*, 343 S.C. at 634, 541 S.E.2d at 836 (testimony that witness knew appellant possessed a nine millimeter pistol was relevant because it tended to identify appellant as the possessor of the murder weapon, a nine millimeter pistol); *State v. Cheeseboro*, 346 S.C. 526, 547, 552 S.E.2d 300, 311 (2001) (prior murder was admissible to establish appel-

lant's identity in the prosecution of the current murder where the same weapon was used in both murders).

## D. Harmless Error

 Petitioner argues the Court of Appeals erred in finding any error in the admission of Lambert's testimony was harmless error. We disagree.

 Generally, appellate courts will not set aside convictions due to insubstantial errors not affecting the result. *State v. Sherard,* 303 S.C. 172, 176, 399 S.E.2d 595, 597 (1991). Error is harmless beyond a reasonable doubt where it did not contribute to the verdict obtained. *Arnold v. State,* 309 S.C. 157, 172, 420 S.E.2d 834, 842 (1992). Thus, an insubstantial error not affecting the result of the trial is harmless where "guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached." *State v. Bailey,* 298 S.C. 1, 5, 377 S.E.2d 581, 584 (1989).

Although the trial judge erroneously admitted testimony that Petitioner failed to stop for a blue light in 1999, the error did not contribute to the guilty verdict. The 1999 failure to stop was not similar to the current murder charge and the danger of prejudice was not enhanced. *Compare State v. Brooks,* 341 S.C. 57, 62–63, 533 S.E.2d 325, 328 (2000) (when the prior bad acts are similar to the one for which the appellant is being tried, the danger of prejudice is enhanced); *State v. Gore,* 283 S.C. 118, 121, 322 S.E.2d 12, 13 (1984) (same). Also, the erroneous admission of bad act evidence had minimal impact when numerous other bad acts, including prior convictions for failure to stop and conspiracy to traffic crack cocaine, were properly admitted. *See State v. Johnson,* 306 S.C. 119, 410 S.E.2d 547 (1991) (finding harmless error when trial judge erred in admitting prior bad act evidence where the testimony was minimal). Furthermore, the trial judge instructed the jury that they could not find Petitioner guilty of murder because Petitioner was charged with failure to stop.

Moreover, other competent evidence established Petitioner's guilt beyond a reasonable doubt. Helton testified to a prior altercation between Petitioner and the victim in which Petitioner told the victim she would die. Blathers testified he saw Petitioner with the victim on the night of the murder and he

later saw Petitioner running away from someone screaming. Cooks gave an eyewitness account of the murder by testifying she witnessed Petitioner beat the victim to death with a board.

## CONCLUSION

The Court of Appeals erred in affirming the trial court's admission of Lambert's testimony as evidence of flight, corroboration, and identity. We conclude the error is harmless and affirm Petitioner's conviction.

**AFFIRMED AS MODIFIED.**

TOAL, C.J., and WALLER, J., concur. MOORE, J., dissenting in a separate opinion in which PLEICONES, J., concurs.

Justice MOORE:

I respectfully dissent. I agree with the majority's conclusion that the trial judge erred in allowing Lambert's testimony; however, in my opinion, this error cannot be harmless. Identity was a critical issue in this case. Petitioner's failure to stop for a blue light in 1999 was irrelevant to his identity as the murderer. The fact that the trial judge specifically instructed the jury it could consider this evidence for identification purposes made the erroneous admission of this evidence even more prejudicial. I would reverse and remand for a new trial.

PLEICONES, J., concurs.