807 S.E.2d 701

**The STATE, Respondent,**

**v.**

**Sandy Lynn WESTMORELAND, Appellant.**

**Appellate Case No. 2014-002636**
**Opinion No. Op. 5498**

Court of Appeals of South Carolina.

Heard April 12, 2017
Filed July 12, 2017
Rehearing Denied December 14, 2017

Chief Appellate Defender Robert Michael Dudek, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Caroline M. Scrantom, all of Columbia, and Solicitor Barry Joe Barnette, of Spartanburg, for Respondent.

THOMAS, J.:

Appellant Sandy Lynn Westmoreland appeals his convictions for murder and hit and run involving a death. He argues the trial court erred by allowing the coroner to testify as a lay witness that the cause of the victim's death was a homicide

and instructing the jury that voluntary intoxication was not a defense. We affirm Appellant's conviction for hit and run and reverse his murder conviction.

## FACTS/PROCEDURAL HISTORY

A grand jury indicted Appellant in October 2012 for murder and hit and run involving a death. The indictments alleged Appellant purposefully hit Michael Daniels (Victim) with his vehicle and failed to remain at the scene to give information or render aid. The murder indictment claimed Victim died due to his injuries. The solicitor called Appellant's case to trial in December 2014.

Travis Haney testified he was a security guard at Mary Black Hospital and was on duty on March 14, 2012. Haney testified he was walking down a hallway when Victim "stumbled" out of a room crying and with a bloody nose. Haney asserted Appellant was inside the room. Haney testified he contacted the sheriff's office per hospital policy. According to Haney, Victim did not want to press charges against Appellant but wanted to gather his things and leave. Haney asserted he and a deputy walked Appellant to his automobile following his discharge from the hospital and watched him drive away alone.

Deputy Jeffery Valentine testified he responded to a report of Appellant assaulting Victim inside the hospital. Valentine's testimony was consistent with Haney's testimony. Additionally, Valentine testified that when he and Haney escorted Appellant to his vehicle after the initial altercation, Appellant noticed Victim had forcibly entered Appellant's vehicle and absconded with some of Victim's possessions. Valentine claimed Appellant became "pretty upset" when Valentine declined to charge Victim with breaking into the vehicle. The following morning, someone discovered Victim dead in the bushes in the hospital parking lot.

The trial court qualified Dr. John Wren as an expert in pathology. Wren testified Victim died almost immediately due to a "vehicle versus pedestrian encounter." Wren asserted Victim was standing and facing away from the vehicle at the time of the collision.

Jason Bryant testified he was a sergeant and supervisor in the violent crime division and he went to Appellant's house

shortly after the incident to question him. According to Bryant, during his initial conversation with Appellant, Appellant claimed he left the hospital without incident and hit a deer on his way home from the hospital. However, Bryant testified that, after he discussed "discrepancies" with Appellant, he admitted he hit Victim with his vehicle when leaving the hospital. Appellant explained to Bryant he did not "drive well at night" and attempted to pull the vehicle over to allow Victim to get inside when he accidently hit him with the vehicle. According to Bryant, Appellant claimed he stopped and checked on Victim but, after realizing Victim was not breathing, became scared and left the scene.

Michael Duncan testified he was a trooper for the highway patrol and was a member of the Multidisciplinary Accident Investigation Team (MAIT). He asserted the MAIT's primary job was reconstructing traffic incidents, and the trial court qualified Duncan as an expert in "accident reconstruction." Duncan claimed he responded to the scene of Victim's death and performed an investigation. Duncan asserted he found "tire tracks going off into the grass at a sharp angle" and there were no "skid marks" leading to where the tire tracks entered the grass. Duncan concluded the vehicle did not attempt to stop based on his observation that there were "acceleration marks in the grass" beyond where Victim's body was found. He contended the vehicle did not decelerate at the point of impact or after; "[i]t was one continuous motion." Duncan estimated the vehicle's speed at a range of twenty-nine and thirty-seven miles per hour. Duncan also surmised there was "severe steering input" to maneuver this vehicle into the grass to strike Victim. He explained this meant the vehicle "did not just drift off the road" and it was more akin to taking a right hand turn into the grass.

Rusty Clevenger testified he was the coroner for Spartanburg County. Following some preliminary testimony regarding his experience, the State offered Clevenger as an "expert in determining the manner of death." Appellant objected to admitting Clevenger as an expert based on his qualifications. After a short colloquy between the trial court and counsel, the State withdrew its attempt to admit Clevenger as an expert. However, Clevenger proceeded to testify his responsibilities as coroner included determining any deceased's manner of death.

He explained any death presents five options when deciding the manner of death: natural, accident, homicide, suicide, and undetermined. Clevenger also explained the process of determining the manner of death included considering the pathologist report and the findings of investigators and law enforcement. Clevenger testified a homicide was "the intentional act of you taking the life of another." In a situation when one person takes the life of another person, he admitted he cannot always determine whether the act was intentional. Clevenger then asserted he "ruled this case a homicide." Appellant objected and claimed Clevenger gave improper opinion testimony. The trial court responded, "I think coroners are required to give rulings on death by law" and "[h]e's stating what his ruling is. I'll overrule the, the objection."

Following the State's case, Appellant testified he was involved in a romantic relationship with Victim for approximately eighteen years. Appellant claimed he and Victim went to the hospital on the day in question because he was experiencing stomach pains and bleeding. Appellant claimed his argument with Victim in the hospital room began because Victim spent their last $20 purchasing what he thought was a crack rock but turned out to be a piece of soap. He asserted his walking cane hit Victim's nose by accident during the argument. Appellant contended he was "high" when the hospital discharged him due to all of the medication he had taken. Appellant testified he was driving away from the hospital when he "saw a glimpse of [Victim] way off the road." Appellant claimed he "jerked the car to pull over and pick him up" and he "felt a bump." Appellant admitted he realized what happened so he "turned around and came back" to check on Victim but realized he was dead. Appellant claimed he did not seek help for Victim because he was already dead and he "just flipped out." Appellant asserted it was an accident.

After both parties rested, they discussed a potential jury charge regarding voluntary or involuntary intoxication with the trial court. Appellant objected to a charge on voluntary intoxication because he was taking prescribed medication. Following the discussion, the trial court indicated it would give Appellant time to research case law supporting his argument and would issue its ruling later. Subsequent to closing arguments, the trial court reopened the discussion on intoxication.

Appellant maintained his position that a charge on voluntary intoxication would be improper because everything Appellant took was prescribed. The following colloquy then took place:

THE COURT: Well, I mentioned to all of you the possibility of me charging the jury that they will have to make a finding of fact—

[Appellant's Counsel]: And that will be fine.

THE COURT: —as to whether or not this was a voluntary or involuntary intoxication, if any at all.

[Appellant's Counsel]: And that would be fair, Your Honor.

THE COURT: Because there was evidence there was [no intoxication] according to the doctor.

[Appellant's Counsel]: Yes, sir.

THE COURT: And so if there, if there was no—if they find that there was no intoxication, it wouldn't be a factor in their determination.

[Appellant's Counsel]: Yes, sir.

THE COURT: If they find that it was voluntarily done, then it's not a defense. If they find that it was involuntarily done, then it would serve as a mitigating factor or a defense to the—to a statute requiring general intent.

[Appellant's Counsel]: Specific intent.

THE COURT: Specific Intent.

[Appellant's Counsel]: Yes, sir, and that would be—we would have no real objection to that. No real objection to that.

THE COURT: So, you would agree to me charging in that fashion?

[Appellant's Counsel]: I would.

During the jury instructions, the trial court issued jury instructions consistent with the above-quoted colloquy. Following the jury instructions, Appellant again stated he had no objection. The jury returned guilty verdicts for murder and hit and run. The trial court sentenced Appellant to thirty years' imprisonment for murder and twenty-five years' imprisonment for hit and run. The trial court ordered the sentences to run concurrent. This appeal followed.

## ISSUES ON APPEAL

1. Did the trial court err by allowing Clevenger to testify as a lay witness that he determined the cause of death was a homicide, which he defined as an intentional act?

2. Did the trial court err by instructing the jury on voluntary intoxication when there was evidence showing Appellant received medication in the hospital for medical purposes?

## CLEVENGER'S TESTIMONY

Appellant argues the trial court erred by allowing Clevenger to testify he determined the manner of death was a homicide because it was impermissible opinion testimony by a lay witness. Specifically, Appellant argues Clevenger was not qualified as an expert and his opinion that Victim's death was a homicide "embraced the ultimate issue to be decided by the jury." Appellant asserts this error was "extraordinarily prejudicial" because he presented an accident defense during trial.

The State argues the trial court did not commit any error by admitting Clevenger's testimony. Specifically, the State argues the testimony was proper because a statute required Clevenger to report the manner of death. The State asserts Clevenger "exemplified the personal knowledge necessary to report that the manner of death was ruled homicide" due to "his statutorily defined role." However, the State acknowledged Clevenger's "testimony assisted the factfinder in winnowing out whether [Victim] died as a result of accident, recklessness, or by the intentional act of another." Despite this acknowledgment, the State claims any error was harmless in light of the other evidence of guilt and it did not contribute to the verdict.

### A. Merits

We find the trial court abused its discretion by committing an error of law when it admitted Clevenger's testimony because it was improper opinion testimony by a lay witness in violation of Rule 701(a), SCRE. "The admission or exclusion of evidence is a matter within the trial court's sound discretion, and an appellate court may only disturb a ruling admitting or excluding evidence upon a showing of a 'manifest

abuse of discretion accompanied by probable prejudice.'" *State v. Commander*, 396 S.C. 254, 262–63, 721 S.E.2d 413, 417 (2011) (quoting *State v. Douglas*, 369 S.C. 424, 429, 632 S.E.2d 845, 847–48 (2006)). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006).

> If the witness is not testifying as an expert, the witness'[s] testimony in the form of opinions or inferences is limited to those opinions or inferences which (a) are rationally based on the perception of the witness, (b) are helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue, and (c) do not require special knowledge, skill, experience or training.

Rule 701. "Expert testimony differs from lay testimony in that an expert witness is permitted to state an opinion based on facts not within his firsthand knowledge...." *Watson v. Ford Motor Co.*, 389 S.C. 434, 445–46, 699 S.E.2d 169, 175 (2010). "On the other hand, a lay witness may only testify as to matters within his personal knowledge and may not offer opinion testimony which requires special knowledge, skill, experience, or training." *Id.* at 446, 699 S.E.2d at 175; *see also State v. Douglas*, 380 S.C. 499, 502, 671 S.E.2d 606, 608 (2009) ("Lay witnesses are permitted to offer testimony in the form of opinions or inferences if the opinions or inferences are rationally based on the witness'[s] perception, and will aid the jury in understanding testimony, and do not require special knowledge."). "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." *State v. Fripp*, 396 S.C. 434, 439, 721 S.E.2d 465, 467 (Ct. App. 2012) (quoting Rule 704, SCRE).

We find the trial court abused its discretion by committing an error of law when it admitted Clevenger's testimony regarding the cause of Victim's death because it constituted improper opinion testimony from a lay witness. Clevenger's opinion as to Victim's cause of death was not based on his perceptions. *See* Rule 701(a) (requiring opinion testimony from a lay witness be limited to opinions based on the witness's perceptions). Clevenger testified his determination of Victim's cause of death was based on the findings of the pathologist

and the investigation of law enforcement. Thus, Clevenger's opinion regarding the cause of Victim's death was not based on his perceptions or observations but instead was based on his review of the perceptions of others. As a result, his testimony as a lay witness was improper opinion testimony under Rule 701(a).[1] *See Douglas*, 380 S.C. at 502–03, 671 S.E.2d at 608 (finding the trial court was not required to qualify the witness as an expert because she testified only to her personal observations and experiences); *Small v. Pioneer Machinery, Inc.*, 329 S.C. 448, 468, 494 S.E.2d 835, 845 (Ct. App. 1997) (finding a lay witness could offer his opinion as to what caused a machine to malfunction because his opinion was based "upon his observations and perceptions as the [daily] operator" of the machine).

With regard to the State's claim the trial court properly admitted Clevenger's testimony because a statute requires the coroner to issue a ruling on cause and manner of death, such a statutory requirement does not necessarily render the coroner's ruling admissible during trial. Clevenger's testimony as to his ruling on cause and manner of death must still comport with the rules of evidence to be admissible. *See Bartlett v. State*, 993 So.2d 157, 164 (Fla. Dist. Ct. App. 2008) (explaining "the mere fact that [a statute] required the investigator(s) to determine whether 'there is probable cause that the force that was used was unlawful' does not automatically bootstrap this information into admissible evidence").

▄ Additionally, we disagree with the State's argument that the trial court properly admitted Clevenger's testimony because "homicide" was a term of art and was not a comment on the criminality of Victim's death. In *Commander*, our supreme court found the trial court correctly admitted testimony from the medical examiner, who was qualified as an expert witness, asserting the victim's death was a homicide. 396 S.C. at 267–70, 721 S.E.2d at 420–21. The court explained, under the circumstances of that case, "homicide" meant only

---

1. Because we find Clevenger's testimony violated Rule 701(a) and the trial court erred by admitting it, we need not address whether his testimony also violated Rule 701(b) or Rule 701(c). *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (explaining an appellate court need not address remaining issues when resolution of a prior issue is dispositive).

that the victim died "by the act, procurement, or omission of another" and did not comment on the criminality of the death. *Id.* at 265, 721 S.E.2d at 419. However, the court expressly recognized "that, in certain circumstances, expert medical testimony of this type has the potential to invade the province of the jury." *Id.* at 268, 721 S.E.2d at 420. As a result, our supreme court adopted the rule allowing a properly qualified expert to testify regarding cause and manner of death "so long as the expert does not opine on the criminal defendant's state of mind or guilt or testify on matters of law in such a way that the jury is not permitted to reach its own conclusion concerning the criminal defendant's guilt or innocence." *Id.* at 269, 721 S.E.2d at 421.

Here, we find Clevenger's lay testimony that Victim's death was a homicide, which he defined as an intentional act, was an opinion on Appellant's state of mind and, thus, his guilt under the circumstances of this case. As discussed more fully below, with regard to Appellant's murder indictment, the main issue during trial was whether Appellant intentionally or accidentally hit Victim with his vehicle. There was no dispute that Appellant's actions led to Victim's death. Thus, Clevenger's testimony that Appellant acted intentionally was an opinion on Appellant's state of mind and guilt. Accordingly, we find Clevenger's testimony violated our supreme court's rule pronounced in *Commander*.

Accordingly, we conclude the trial court abused its discretion by committing an error of law when it admitted Clevenger's opinion testimony that Victim's death was a homicide because his testimony violated Rule 701(a).

### B. Harmless Error

 We find the trial court's error was not harmless as to Appellant's murder conviction because Clevenger's testimony went to the trial's main issue regarding murder and went to the heart of Appellant's defense. However, the error was harmless as to Appellant's conviction for hit and run because it could not reasonably have affected the result of that conviction.

"Generally, appellate courts will not set aside convictions due to insubstantial errors not affecting the result." *State v.*

*Pagan,* 369 S.C. 201, 212, 631 S.E.2d 262, 267 (2006). Where "guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached," an insubstantial error that does not affect the result of the trial is considered harmless. *Id.* A harmless error analysis is contextual and specific to the circumstances of the case: "No definite rule of law governs [a finding of harmless error]; rather the materiality and prejudicial character of the error must be determined from its relationship to the entire case. Error is harmless when it could not reasonably have affected the result of the trial." *State v. Reeves,* 301 S.C. 191, 193–94, 391 S.E.2d 241, 243 (1990).

*State v. Byers,* 392 S.C. 438, 447–48, 710 S.E.2d 55, 60 (2011). "An officer's improper opinion which goes to the heart of the case is not harmless." *State v. Ellis,* 345 S.C. 175, 178, 547 S.E.2d 490, 491 (2001).

" 'Murder' is the killing of any person with malice aforethought, either express or implied." S.C. Code Ann. § 16-3-10 (2015). South Carolina requires the driver of any vehicle involved in an incident resulting in injury or death to give his name, address, and vehicle registration number to the other driver. S.C. Code Ann. § 56-5-1230 (2006). Section 56-5-1230 also requires a driver involved in an incident to render aid to any person injured due to the incident including "making arrangements for the carrying of such person to a physician." *Id.* Additionally, statute mandates a driver involved in an incident resulting in death or injury to a person shall return to and remain at the scene until he has fulfilled all requirements of section 56-5-1230. S.C. Code Ann. § 56-5-1210(A) (2006). A driver who fails to comply with section 56-5-1210(A) is guilty of a felony and "must be imprisoned not less than one year nor more than twenty-five years" when death results. S.C. Code Ann. § 56-5-1210(A)(3) (2006).

In this case, the trial court's error was not harmless with regard to Appellant's murder conviction because the error could reasonably have affected the result of the murder conviction by commenting on the main issue to be decided by the jury and discrediting Appellant's main defense. The main issue during the trial was whether Appellant intentionally or accidentally hit Victim with his vehicle. Appellant testified he

was aware his vehicle hit Victim at the time of the incident. However, Appellant claimed the incident was an accident and he did not intentionally hit Victim. The State asserted Appellant intentionally hit Victim and offered physical evidence of the scene and other evidence tending to show Appellant had a motive to hurt Victim. Thus, the main issue for the jury to decide regarding the murder indictment was whether the incident was the result of an intentional act or an accident. Such a determination likely would have been the deciding factor when assessing whether Appellant acted with malice aforethought, which was an essential element of murder. Clevenger's testimony went directly to the heart of this issue.

Clevenger testified his professional responsibilities included determining a deceased's manner of death. He explained any death presents five options: natural, accident, homicide, suicide, and undetermined. Clevenger defined the homicide option as "the intentional act of you taking the life of another." He then explained he "ruled this case a homicide." Through this testimony, Clevenger offered his opinion that this case involved a homicide, which he defined as an intentional act. Also, one of the other potential manners of death was accident, and he expressly ruled out that option by testifying the case was a homicide. Additionally, in its brief, the State admitted Clevenger's "testimony assisted the factfinder in winnowing out whether [Victim] died as a result of accident, recklessness, or by the intentional act of another." Thus, his testimony went directly to the main issue during trial and the heart of Appellant's defense that the incident was an accident. *See State v. Huckabee*, 419 S.C. 414, 430, 798 S.E.2d 584, 592–93 (Ct. App. 2017) (finding improper testimony was not harmless, in part, because it went to the heart of the appellant's defense), *petition for cert. filed.*

Although the remaining evidence tending to show Appellant intentionally hit Victim was compelling, including the physical and motive evidence, we find Clevenger's testimony could have reasonably impacted the result of the murder conviction and, thus, was not harmless. *See Ellis*, 345 S.C. at 178, 547 S.E.2d at 491 (explaining improper testimony that went to the heart of the case was not harmless). Accordingly, we reverse Appellant's murder conviction.

■ However, the trial court's error was harmless with regard to Appellant's conviction for hit and run. Clevenger's testimony was not direct evidence tending to show Appellant's guilt or innocence for hit and run. Also, his testimony was not an opinion on the main issue for the jury to decide regarding hit and run. Clevenger's testimony was an opinion on Appellant's intent and state of mind shortly before and at the time Appellant hit Victim with his vehicle. As noted above, this was the main issue for the murder conviction. However, whether Appellant intentionally or accidentally hit Victim was mostly irrelevant when deciding whether Appellant was guilty of hit and run. The relevant inquiries for hit and run were whether Appellant was aware he was involved in an incident involving a vehicle and did he fail to comply with section 56-5-1210(A). The hit and run statutes seek to examine a driver's actions and intent following a vehicle incident. Clevenger's testimony offered no opinion as to Appellant's actions or intent following the incident in this case.

Furthermore, Appellant admitted he realized he hit Victim and stopped to check on him. He also admitted leaving the scene without ever contacting police, rendering aid to Victim, or providing the information required by section 56-5-1210(A) and section 56-5-1230. He claimed he failed to seek help for Victim because he "just flipped out" and Victim was already dead. Thus, Appellant's admissions provided overwhelming evidence of guilt for hit and run. Because Clevenger's testimony was mostly irrelevant with regard to the hit and run conviction and Appellant's testimony provided overwhelming evidence of guilt, Clevenger's testimony could not reasonably have impacted the result of the conviction for hit and run. Therefore, we affirm this conviction.

Accordingly, the trial court erred by admitting Clevenger's testimony because it constituted improper opinion testimony from a lay witness in violation of Rule 701(a). We reverse Appellant's murder conviction because the error was not harmless for that conviction. However, the error was harmless as to Appellant's conviction for hit and run, and we affirm that conviction.

## VOLUNTARY INTOXICATION CHARGE

■ Appellant argues the trial court erred by instructing the jury on voluntary intoxication because the evidence was

undisputed the hospital heavily medicated him for medical purposes. Appellant claims he did not waive his objection to a voluntary intoxication charge by merely consenting to a "less damaging" instruction. The State argues this issue is unpreserved because Appellant conceded any objection to the trial court's proposed jury instructions regarding intoxication.

■ "It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial [court] to be preserved for appellate review." *Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998). "An issue conceded in a lower court may not be argued on appeal." *TNS Mills, Inc. v. S.C. Dep't of Revenue*, 331 S.C. 611, 617, 503 S.E.2d 471, 474 (1998). We decline to address this issue because Appellant conceded any objection to the jury instructions. Although Appellant initially objected when the State requested an instruction on voluntary intoxication, the trial court later proposed jury instructions related to intoxication. After the trial court explained its proposed instructions on intoxication, Appellant stated, "we would have no real objection to that. No real objection to that." Subsequently, the trial court instructed the jury consistent with its proposal to the parties, and following the instructions, Appellant expressly denied having any objection. Based on these circumstances, Appellant conceded any objection he may have had to the jury instructions on intoxication. Thus, we affirm the trial court's jury instructions.

## CONCLUSION

Based on the foregoing, we find the trial court erred by admitting Clevenger's testimony because it was improper opinion testimony from a lay witness in violation of Rule 701(a). We affirm Appellant's conviction for hit and run because the trial court's error was harmless as to that conviction. However, we reverse Appellant's murder conviction because the error was not harmless and could have contributed to the verdict. Additionally, we find Appellant conceded his argument regarding the jury instructions to the trial court.

**AFFIRMED IN PART AND REVERSED IN PART.**

LOCKEMY, C.J., and HUFF, J., concur.