# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Kenneth Henry Eastwood, Appellant.

Appellate Case No. 2023-001798

————————

Appeal From Orangeburg County
Maite Murphy, Circuit Court Judge

————————

Opinion No. 28308
Heard September 23, 2025 – Filed November 19, 2025

————————

**AFFIRMED**

————————

Adam Sinclair Ruffin, of Ruffin Law Firm, LLC, of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Senior
Assistant Deputy Attorney General Melody Jane Brown,
and Assistant Attorney General Kaylee Christene Kemp,
all of Columbia; and Solicitor David Michael Pascoe, Jr.,
of Orangeburg, for Respondent.

————————

**JUSTICE HILL:** Kenneth H. Eastwood appeals his murder conviction. The sole issue is whether the trial court erred in refusing to allow Eastwood to present evidence that, shortly before he confessed to killing the victim, he had taken a polygraph test and police told him he had failed. Eastwood sought to elicit this evidence to support his defense that his confession was false. We hold the trial court

erred in excluding the polygraph evidence but find the error did not affect the jury's verdict. We therefore affirm his conviction.

## I.

Four days after Cara Hodges (Victim) disappeared, her body was found in a wooded area beside a dirt road. She had been strangled to death. After investigators discovered Eastwood was the last person Victim was seen with, they contacted him. He agreed to accompany them to the Orangeburg County Sheriff's Office, where he was given *Miranda* warnings and interviewed.

During the interview, Eastwood admitted he had been drinking with Victim the day and night of her disappearance. He stated she had stayed at his house that night, and when he woke up the next day, she was gone. After being questioned for about an hour, Eastwood agreed to take a polygraph. After the test, officers told Eastwood he did not pass and that they believed he was lying to them. Eastwood consented to a DNA swab and a search of his home and car. Investigators also photographed several scratches on Eastwood's chest, which he said were cat scratches. Once the search of Eastwood's home concluded around 9 p.m., the officers left Eastwood at his home but impounded his car.

Eastwood stated he did not sleep that night. The next morning, he walked some five miles to the grocery store where he worked. Upon arrival, he told his boss, Brian Lauder, that "I won't be in today, and I probably won't be back." When Lauder asked him why, Eastwood explained the police had picked him up the day before, and he admitted, "I killed her. I strangled her." Eastwood stated he killed her because "she wouldn't leave me alone." Lauder testified that Eastwood stated he had "put her in the car and dumped her on the side of the road." Lauder advised Eastwood to turn himself in. Eastwood agreed to do so once police received the DNA results because "they'll know and I'll confess then." After Eastwood left, Lauder called the police to tell them of the conversation.

Police then arrested Eastwood. He soon confessed to strangling Victim at his home with an extension cord, placing her in the trunk of his car, and later leaving her body in some woods beside a road. He also claimed to have disposed of her clothes, later specifying he threw them in a dumpster at a convenience store. Police never found the clothes or the extension cord.

Eastwood did not testify. His false confession expert, Alan Hirsch, testified about circumstances under which it has been proven that innocent people have confessed to a crime. According to Hirsch, Eastwood's confession was consistent with an

internalized false confession. The jury deliberated for an hour and a half and found Eastwood guilty of murder.

## II.

Eastwood sought to present evidence through his false confession expert witness that police had told him he had failed the polygraph test. The trial court denied the request, ruling Eastwood had not demonstrated polygraph tests were reliable or otherwise satisfied the criteria for the admissibility of expert testimony set by Rule 702, SCRE. Turning to Rule 403, SCRE, the trial court further ruled that admitting evidence about what the police told Eastwood about the polygraph result would confuse the issues before the jury and also cause unfair prejudice to Eastwood because it could "bolster" rather than undermine the truth of his confession.

### A. Rule 702, SCRE

The trial court erred in relying upon Rule 702 to exclude the polygraph evidence. Eastwood was not offering scientific evidence about the polygraph, so there was no need to call upon Rule 702. Hirsch, Eastwood's false confession expert, had already been qualified. The reliability of the expert's opinion or polygraph tests was not at issue. At issue was whether Hirsch should have been allowed to tell the jury that Eastwood had taken a polygraph and the police had told him he failed. This issue is controlled by Rule 403, at least under the circumstances here.

### B. Rule 403, SCRE

#### i. Confusion of the Issues

Rule 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." As noted, the trial court ruled the evidence about the polygraph would confuse the issues before the jury. We disagree. Eastwood was seeking to prove that he had taken a polygraph test and been told he had failed. This evidence was relevant to a key issue before the jury: whether Eastwood's confession was false. Hirsch explained there are two essential ingredients to an internalized false confession: the suspect must be confronted with "allegedly objective evidence of guilt" *and* the suspect must distrust his memory.

Hirsch gave several examples illustrating what he meant by a suspect being confronted by "allegedly objective evidence of guilt." He testified police may tell a suspect his DNA was found at the crime scene, that an eyewitness has identified

him, or that he has failed a polygraph. Hirsch emphasized that these claims are often untrue but used to frighten the suspect into confessing by making him believe he cannot avoid conviction. It does not matter, according to Hirsch, whether the evidence the police confront the suspect with is real. What matters is what the suspect believes about the evidence. In the polygraph example, Hirsch pointed out to the jury that some false confessions are given after the police have told the suspect he flunked a polygraph, when in fact a polygraph had not been administered. Hirsch contended the average person may not know how a polygraph works, so it is possible for police to convince many suspects that it is a reliable and even infallible "science."

In explaining why Eastwood's confession bore the hallmarks of an internalized false confession, Hirsch noted that during the first interview, Eastwood was cooperative, maintained his innocence, and wanted to take a polygraph. Later, Eastwood was told by police that they knew he was lying. Hirsch was not allowed to tell the jury that Eastwood had taken a polygraph and the police told him he had flunked it. But Hirsch did tell the jury that Eastwood's distrust of his memory due to alcohol abuse and sleep deprivation, compounded by being confronted by the police with their belief that he was lying, may have led him to think he must have killed Victim.

Given Hirsch's opinion testimony, the polygraph evidence carried enough probative force to not be substantially outweighed by any danger that it would cause the jury to confuse the issues. Hirsch's opinion that Eastwood's confession was false was premised in part on evidence Eastwood had been confronted by police with "allegedly objective evidence" of guilt. The police's confronting Eastwood by claiming that he had failed the polygraph advanced this premise. When a criminal defendant challenges the validity of his confession, "the physical and psychological environment that yielded the confession can also be of substantial relevance to the ultimate factual issue of the defendant's guilt or innocence." *Crane v. Kentucky*, 476 U.S. 683, 689 (1986). Although Eastwood presses no constitutional claim here, excluding evidence of the circumstances surrounding a confession can abridge the defendant's constitutional right to present a complete defense. *Id*. ("[S]tripped of the power to describe to the jury the circumstances that prompted his confession, the defendant is effectively disabled from answering the one question every rational juror needs answered: If the defendant is innocent, why did he previously admit his guilt?").

There was little danger that admitting this evidence would confuse the jury into thinking they now had to decide whether Eastwood had in fact failed the polygraph or whether polygraph results are reliable. The jury may well have become curious about what the polygraph result in fact showed or could show, but curiosity about unoffered evidence roams infinite, and curiosity does not equate to confusion of the

issues in the sense meant by Rule 403. Any lingering risk of confusion could have been reduced by instructing the jury that they were to consider evidence about the polygraph only for the purpose of deciding whether Eastwood had taken the polygraph and been told he had failed. *See* Rule 105, SCRE. Letting the jury hear that Eastwood was told he had failed the polygraph would have allowed Hirsch to show how closely the specifics of Eastwood's confession matched the general theory of false confessions. *See Rogers v. Commonwealth*, 86 S.W.3d 29, 39 (Ky. 2002) (holding that, in the context of a false confession defense, preventing the defendant from referencing the polygraph "pulled the proverbial rug out from under Appellant's defense and left Appellant unable to present the jury with the factual circumstances that he alleged caused him to confess falsely").

### ii. Unfair Prejudice

The trial court also mentioned that admitting the polygraph evidence could prejudice Eastwood because it tended to bolster rather than cast doubt upon the truth of his confession. The trial court relied upon *State v. Wright*, where we affirmed the exclusion of testimony that Mr. Wright had confessed soon after being told by the polygraph examiner that the test results showed deception and the results could be admissible in court. 322 S.C. 253, 254–55, 471 S.E.2d 700, 701 (1996). The defense's theory in *Wright* was that the confession was coerced. The case did not involve an expert opinion about false confession theory. Although *Wright* did not rely upon Rule 403, it surmised that allowing the defendant to introduce evidence that he was told he failed the polygraph could only prejudice the defendant because

> the only inference the jury could reasonably have drawn from learning [the defendant's] confession followed closely after a deceptive polygraph was that the confession was truthful and the answers given to the polygraph exam were untruthful. This would serve to bolster the confession rather than persuade the jury to believe the alleged coercion.

*Id*. at 256, 471 S.E.2d at 702.

We can understand how the trial court believed it was bound by *Wright*, but we limit that decision to its facts. *Wright*'s comment about the "only inference" that can be drawn from a confession that follows a polygraph does not hold up in a false confession theory scenario, for the very essence of this theory is that more than one inference can be drawn in such circumstances. Given Eastwood's defense theory

and Hirsch's opinion testimony, we hold it was error to exclude evidence that Eastwood had been told he had failed the polygraph test.

### C. Whether the Error Contributed to the Guilty Verdict

The closer question is whether the error in excluding the evidence prejudiced Eastwood to the point of requiring reversal of his conviction. The answer depends on whether the error affected the outcome of the trial by contributing to the verdict. *State v. Pagan*, 369 S.C. 201, 212, 631 S.E.2d 262, 267 (2006) ("Generally, appellate courts will not set aside convictions due to insubstantial errors not affecting the result."); *see also State v. Reyes*, 432 S.C. 394, 405–06, 853 S.E.2d 334, 340 (2020).

We are persuaded it did not. Hirsch testified that Eastwood confessed only after the police had told him they believed he was lying. This was sufficient to satisfy the first essential element of an internalized false confession: that the police confronted the defendant with allegedly objective evidence of guilt. Hirsch explained the second element of an internalized false confession was also present because Eastwood was confronted with this allegedly objective evidence of his guilt when he was susceptible to believing his drink-addled, sleep-deprived mind might be playing tricks. In Hirsch's opinion, all of this could have led Eastwood to believe he must have killed Victim, inducing a false confession.

The jury rejected Eastwood's defense. We are convinced the jury would have rejected it even if Hirsch had been allowed to add that the context for the police's statement to Eastwood that he was lying was that he had failed the polygraph. Allowing the jury to hear the source of the police's belief may have burnished Hirsch's opinion with detail and enabled it to dovetail with the example he had given about the use of polygraphs as allegedly objective evidence of guilt. But excluding it did not materially dilute his opinion. *Cf. State v. Cope*, 405 S.C. 317, 346–47, 748 S.E.2d 194, 209–10 (2013) (finding the trial court did not err in excluding false confession expert from testifying about the details of several past cases where confessions were proven false; expert was allowed to give "extensive and thorough testimony" that internalized false confessions do occur and what can cause them) *overruled in part on other grounds by State v. Wallace*, 440 S.C. 537, 542 n.3, 892 S.E.2d 310, 312 n.3 (2023).

After all, Hirsch told the jury that Eastwood had told police he was willing to take a polygraph. The State did not attack Hirsch's opinion on the ground that he had not identified the basis or source of the police's belief that Eastwood was lying. And, as we have explained, omitting these specifics did not prevent Hirsch from giving his

opinion or remove an essential part of his theory. It was not as if Einstein had been stopped from including the "m" in $E=mc^2$.

One thing contested at trial was whether Eastwood had been told by police before he confessed that Victim had been strangled and her unclothed body left beside a road. There is no evidence the police told Eastwood these details, which cut against his false confession defense. In addition, a reasonable jury might have concluded it was less likely Eastwood had falsely confessed because he first admitted he killed Victim to Lauder rather than to the police. While a previous admission to a third party not connected with the police does not always mean the admission was true and the later confession to the police could not be false, the sequence was something the jury could consider.

To be sure, the physical evidence linking Eastwood to the murder was limited. His DNA was found under some of Victim's fingernail clippings, but that could be explained by their dancing together and touching each other the night before she disappeared. Eastwood had bruises and scratches on his torso that a pathologist testified suggested a struggle and were likely caused by a human, not a cat as Eastwood claimed. Although no extension cord was ever found, police discovered a space heater at Eastwood's home located in a position that could have required an extension cord to reach the outlet.

Eastwood's skilled trial counsel stressed the lack of DNA and other physical evidence. On cross-examination, the pathologist conceded it was possible the Victim had been killed a day or two later than the State contended, which could have excluded Eastwood as the murderer.

Though the evidence of guilt does not overwhelm, the question before us is whether the absence of the polygraph evidence details from Eastwood's false confession defense reasonably affected the jury's verdict. Because we conclude it did not, Eastwood's conviction is

**AFFIRMED.**

**KITTREDGE, C.J., FEW, JAMES and VERDIN, JJ., concur.**